**UPPER DARBY TOWNSHIP,**
Petitioner

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (NICASTRO),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 8, 2010.

Decided March 17, 2011.

Reargument Denied May 16, 2011.

Publication Ordered June 21, 2011.

Cecilia M. Muneses, Media, for petitioner.

Arthur G. Girton, Chester, for respondent Mark Nicastro.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Upper Darby Township (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the Workers' Compensation Judge's (WCJ) decision reinstating the total disability benefits of Mark Nicastro (Claimant). In doing so, the Board concluded that Claimant proved, through medical evidence, that his work-related injury once again caused him to experience a loss of earning power. Because we conclude that Claimant's evi-

dence was insufficient to meet his burden of proof for a reinstatement, we now reverse.

Claimant was employed as a laborer in Employer's sanitation department. Claimant walked behind a garbage truck and lifted garbage cans, emptying the contents into the truck. Claimant lifted approximately two hundred garbage cans per shift, each weighing, on average, forty pounds or more. On April 23, 2002, Claimant injured his low back while lifting a garbage can. Employer issued a Notice of Temporary Compensation Payable (NTCP) accepting liability for a low back strain and paying total disability benefits. The NTCP subsequently converted to a Notice of Compensation Payable. Claimant received treatment for his back injury from Employer's panel physician, Dr. John Whalen. On March 22, 2004, Claimant returned to his regular job with no restrictions, and Employer suspended Claimant's disability payments by issuing a Notification of Suspension.

On June 8, 2004, Claimant again hurt his low back while lifting a garbage can. Claimant filed a claim petition seeking benefits for this new injury. Litigation ensued before a WCJ, and the parties ultimately resolved the matter by entering into a "Binding Stipulation of Fact to Resolve the Issues in Dispute Between the Parties." Reproduced Record at 274a–276a (R.R. ——). The parties agreed that Claimant had sustained a work-related back injury that resulted in a limited period of disability from June 8, 2004, through October 7, 2004. They agreed that Claimant returned to his regular job without restrictions on October 8, 2004. The parties also agreed that any time Claimant missed from work after October 8, 2004, was not attributable to his work injury and that Claimant ultimately left his job with Employer in December 2004 because of "injuries unrelated to his back." R.R. 275a.[1] The WCJ issued a decision on May 31, 2006, adopting the stipulation as his own findings of fact and conclusions of law,

---

1. The stipulation contains the following specific findings:

> 2. The Claimant's testimony was presented at a hearing that was held in this matter on December 5, 2005. At that time the Claimant testified as follows:
>
> \*    \*    \*
>
> d. The Claimant while working on June 8, 2004 reinjured his lower back while lifting a trash can. This time it was a sharp pain down the right leg. It was a similar type of pain emanating from the low back. The pain that he experiences continues to this day. The Claimant again treated with Dr. Whalen including therapy and medications, as well as other treatment.
>
> e. *As a result of this re-injury of the Claimant's low back he was out of work from June 8, 2004 until approximately October 7, 2004. This was a four month period during which he continued to treat with Dr. Whalen. His condition improved on October 7, 2004. He returned to his regular duties with no loss of pay.*

> f. *The Claimant has since stopped working for the Township as of December, 2004 for injuries unrelated to his back.*
>
> g. The Claimant continues to treat for his low back pain; although *he has no further wage loss associated with his work [injury] subsequent to October 7, 2004.*
>
> 3. Submitted during the course of this litigation were a number of medical records that support and substantiate the Claimant's pain and the fact that he reinjured his low back sustaining an injury in the nature of an aggravation of his lower back injury, also resulting in sharp lower back pains and pain radiating down the right leg.
>
> 4. The Claimant has met his burden of establishing that he is entitled to wage loss benefits at the compensation rate of $447.12 per week from June 8, 2004 through October 7, 2004 inclusive. Pursuant to his testimony *any time he missed after that was unrelated to his back injury.*

R.R. 275a (emphasis added).

and awarding Claimant total disability benefits for the closed period from June 8, 2004, through October 7, 2004, followed by a suspension of indemnity benefits.

In January 2008, Claimant filed a petition seeking a reinstatement of total disability benefits, alleging that his condition had worsened and his work-related injury had once again caused him to suffer a loss of earning power as of January 24, 2008. Employer filed an answer denying Claimant's allegations. In the course of the litigation, it became apparent that Claimant actually sought a reinstatement of benefits as of December 5, 2004, when he stopped working for Employer.

At the hearing before the WCJ, Claimant testified in support of his petition. He described injuring his back at work in April 2002 and again in June 2004. Claimant acknowledged that after each injury, he returned to his regular job without restrictions. With regard to the second injury, he stated that he returned to work on October 8, 2004, and was able to do the job, albeit with some pain. Claimant worked until December 5, 2004, when Employer terminated him for taking too many sick days. According to Claimant, some of the sick days were attributable to his back pain, but he did not tell Employer why he was taking the sick days. After leaving work, Claimant continued to treat with Dr. Whalen until May 2006. He then began treating with Priya Swamy, M.D., in November 2006. Claimant has not had any further back injuries, and he acknowl-

edged that no specific incident prompted him to seek a reinstatement.

Claimant testified that he has not worked anywhere since December 2004. Claimant stated that he would "love to try" working, but Dr. Swamy will not permit him to work. Claimant also stated that since December 2004, he has been capable of performing his pre-injury job without restrictions.[2]

Claimant presented the March 2008 deposition testimony of Dr. Swamy, who is board certified in physical medicine and rehabilitation. Dr. Swamy began treating Claimant on November 1, 2006. Based on a 2002 EMG report and a 2003 discogram report, Dr. Swamy diagnosed Claimant with a herniated disc at L5–S1 causing lumbar radiculopathy, which was confirmed by the absence of Claimant's right ankle reflex on physical examination. Dr. Swamy has not seen any new diagnostic studies. She ordered an MRI in February 2008 but did not have the results. In addition, Dr. Swamy reviewed only a few of Claimant's medical records. She did not see any records at all from Dr. Whalen or from Dr. Catherine DeGregorio, who performed back surgery, nor did she see any of Claimant's medical records from any source from December 2004 to November 2006.

Dr. Swamy opined that Claimant reached maximum medical improvement and will permanently continue to have pain, which can be managed by medication. Dr. Swamy also opined that Claimant can-

---

2. The following dialogue occurred at hearing:
[**Claimant's counsel**]: Do you believe since December of '04, that you have been physically capable of continuing to do that type of trash work on a regular basis?
[**Claimant**]: Um. Yes. I believe so. With some difficulty. But, I think I would have been able.
[**Claimant's counsel**]: Is there some point, since then, that your back got in a situation

where you don't think you could do it on a regular basis?
[**Claimant**]: No. Like I said. There is pain. I'm going to have to live with it.
[**Claimant's counsel**]: But, the Township did not allow you to continue; is that correct?
[**Claimant**]: Correct.
R.R. 101a–102a.

not perform his pre-injury job. In fact, Dr. Swamy believed that Claimant would not have been able to perform his regular job at any time between December 2004 and November 2006 when she began treating him. Dr. Swamy explained her opinion on disability as follows:

> [T]he fact that [Claimant] reattempted [his regular job] and was not successful ... shows that he had not heal[ed] sufficiently to be able to return to such an occupation.

R.R. 137a. Dr. Swamy believed Claimant could work in a lighter capacity, but she did not feel comfortable establishing restrictions for Claimant until he underwent a functional capacity test. Dr. Swamy and Claimant never discussed his ability to work, and he never asked to be released to work.

Employer presented the deposition testimony of L. Richard Trabulsi, M.D., a board certified orthopedic surgeon who performed three independent medical examinations of Claimant on March 12, 2003, February 25, 2004, and July 18, 2008. Dr. Trabulsi reviewed various medical records, including those of Dr. Whalen, and MRI reports from 2002 and 2003 which documented a disc herniation at L5–S1. Dr. Trabulsi also reviewed a note from Dr. DeGregorio showing that Claimant underwent a percutaneous disc decompression at L5–S1 in November 2003.[3] Although Claimant had subjective pain complaints, Dr. Trabulsi's physical examination in February 2004 showed Claimant to be normal and able to return to his regular job.

When Dr. Trabulsi saw Claimant in July 2008, he learned that Claimant had sustained a second work injury in June 2004.

Dr. Trabulsi performed a physical examination that was "essentially unchanged" from February 2004. R.R. 188a. Claimant reported pain, but the examination was normal. Dr. Trabulsi reviewed additional medical records, and they did not support any worsening of Claimant's condition. In fact, an MRI from April 2008 revealed that Claimant's condition had actually improved following the percutaneous disc decompression because the herniation at L5–S1 was gone. Dr. Trabulsi opined that Claimant was capable of performing his pre-injury job without restrictions. Dr. Trabulsi saw nothing in the records or in Claimant's history to indicate that his work injury would have precluded him from performing his pre-injury job either as of, or after, December 2004.

The WCJ credited Claimant's testimony. The WCJ also credited the testimony of Dr. Swamy over that of Dr. Trabulsi. The WCJ discounted that part of Dr. Swamy's opinion that was contrary to the stipulation, i.e., that Claimant could not do his pre-injury job after December 2004. The WCJ accepted Dr. Swamy's opinion that Claimant's work injury disabled him as of November 1, 2006, the date she began treating him. Based on her credibility determinations, the WCJ found that Claimant's medical condition resulting from both his 2002 and 2004 work injuries had worsened so that Claimant could no longer perform his pre-injury job as of November 1, 2006. Accordingly, the WCJ reinstated Claimant's total disability benefits as of that date.

Employer appealed and the Board affirmed. Employer then petitioned for this Court's review.[4]

---

3. Dr. Trabulsi explained that this procedure causes a disc to shrink and, ultimately, possibly to be reabsorbed back into the original disc space.

4. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were

On appeal, Employer raises four issues for our consideration.[5] First, Employer argues that the WCJ's factual findings are not supported by substantial, competent evidence. Second, Employer argues that the WCJ erred in reinstating benefits based on both the April 2002 and June 2004 work injuries without specifying how Employer is to pay Claimant for two separate injuries. Third, Employer asserts that the WCJ failed to issue a reasoned decision. Fourth, Employer contends that the WCJ erred by effectively amending the injury description when there was no review petition pending before her.

■ A claimant seeking a reinstatement of suspended benefits must prove that the reasons for the suspension no longer exist. *Bissland v. Workmen's Compensation Appeal Board (Boyertown Auto Body Works)*, 162 Pa.Cmwlth.348, 638 A.2d 493, 496 (1994). In general, the claimant has the burden of proving that: (1) his earning power, or disability, is once again adversely affected by his work injury, and (2) that the new disability is related to the original injury. *Bufford v. Workers' Compensation Appeal Board (North American Telecom)*, 606 Pa. 621, 637, 2 A.3d 548, 558 (2010). Where a claimant's earning power is affected by both a work injury and a non-work injury, the claimant seeking reinstatement must prove that

"there has been a change of physical condition or circumstances since the last legal proceeding addressing the nature and extent of the disability." *Pucci v. Workers' Compensation Appeal Board (Woodville State Hospital)*, 707 A.2d 646, 648 (Pa. Cmwlth.1998). The claimant must show that the non-work injury is no longer disabling and that the work injury is now causing the loss of earning power. *Id.*[6]

■ In its first argument, Employer asserts that Claimant failed to meet his burden of proof. Employer argues that the reinstatement as of November 1, 2006, is contrary to Claimant's own testimony and to the stipulated facts, making Dr. Swamy's opinion incompetent. We agree.

In the prior litigation, Claimant stipulated that after he returned to his pre-injury job in October 2004, he missed no time from work because of his work injury and that he left work in December 2004 for reasons unrelated to the work injury. Stated otherwise, Claimant would have continued to perform his pre-injury job without restrictions had it not been for his non-work problems. To reinstate his total disability benefits, Claimant had to show that the reason for the suspension of his benefits in December 2004 no longer existed.[7] Claimant's evidence utterly failed to

violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003).

5. For organizational purposes, we have rearranged the order of Employer's arguments.

6. In its brief, Employer cites law pertaining to a reinstatement of benefits following a discharge for willful misconduct. Although Claimant testified that Employer fired him for taking an excessive number of sick days, the WCJ correctly found that there is no mention in the stipulation that Claimant was fired for willful misconduct. Rather, the parties stipu-

lated merely that Claimant left his job for injuries not related to the work injury. Therefore, there is no basis to treat this case as a termination for willful misconduct.

7. Employer also argues that the WCJ erred in re-deciding issues that were already decided in the WCJ's May 2006 decision that incorporated the stipulated findings. This is true. However, the WCJ ultimately acknowledged that she was bound by the stipulated findings that Claimant had no wage loss related to the work injury after October 7, 2004, and that Claimant's departure from work in December 2004 was not related to the work injury.

meet this burden. Critically, Claimant acknowledged in his testimony before the WCJ that he could do his regular job as of December 2004 and as of February 2008.[8] Claimant's own testimony, then, belies the theory that his work injury once again negatively impacted his earning power. Also, Claimant offered no testimony or other evidence that the "injuries unrelated to his back," which caused him to leave work in December 2004, had ceased to be the reason for his loss of earning power.[9]

Further, Dr. Swamy's testimony does not support a reinstatement. Her opinion that Claimant's work injury prevented him from performing his pre-injury job suffers from two flaws.

First, Dr. Swamy's opinion is contradicted by Claimant's statement that he could have continued performing his regular job at all times. Dr. Swamy was unaware of what work Claimant was capable of performing because she never spoke with him about his capabilities and she never had Claimant undergo a functional capacity test to determine if he even needed work restrictions.

Second, Dr. Swamy's opinion was based on incorrect information. Dr. Swamy testified that Claimant was disabled by his work injury because he had earlier attempted to return to his regular job but could not do it, prompting her to opine that Claimant's work injury must not have been sufficiently healed to allow him to work without restrictions. Her testimony directly contradicts the stipulated facts and the 2006 WCJ's decision. They established that Claimant was, in fact, sufficiently healed enough to do his regular job in October 2004; that he missed no time due to his work injury after that date; and that he left work in December 2004 because of "other injuries." Dr. Swamy never acknowledged these facts or explained what change occurred so that Claimant's work injury, which was not disabling in December 2004, became disabling at a later date. Dr. Swamy's unfamiliarity with the established facts, and with Claimant's condition prior to November 2006, resulted in her rendering a medical opinion of disability that is not competent.[10]

The WCJ, recognizing the deficiency in Dr. Swamy's opinion on disability, unilaterally fixed the date of reinstatement as November 1, 2006, when Dr. Swamy began treating Claimant. This the WCJ cannot do. Claimant chose to settle all issues, including nature and extent of disability, in the prior litigation by stipulation. Claimant is bound by the established facts and was required to show that *something changed in his condition or circumstances* after the WCJ's May 2006 decision adopting the stipulation. However, the only thing that changed was that Claimant stopped treating with Dr. Whalen, retained new counsel and started treating with Dr. Swamy, who rendered a *different* opinion regarding Claimant's disability as of November 1, 2006, without regard to the established facts. Beginning treatment with

---

8. It is axiomatic that a claimant's degree of disability is to be determined by how his work injury affects his earning power. *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 501, 640 A.2d 386, 391–92 (1994).

9. In fact, there is no evidence of what those unrelated injuries were.

10. An expert opinion is incompetent if it is based on an assumption that is contrary to the established facts of the case. *Williams v. Workers' Compensation Appeal Board (Hahnemann University Hospital)*, 834 A.2d 679, 684 (Pa.Cmwlth.2003).

a new doctor, who opines that the work injury is disabling, is not sufficient to show a change in condition.[11] The WCJ's selection of an artificial date for reinstatement does not overcome the deficiencies in Claimant's evidence.

In sum, Claimant failed to meet his burden of proving entitlement to a reinstatement of total disability benefits. Accordingly, the order of the Board is reversed.[12]

## ORDER

AND NOW, this 17th day of March, 2011, the order of the Workers' Compensation Appeal Board dated May 28, 2010, in the above captioned matter is hereby REVERSED.

---

11. Claimant is, for all intents and purposes, attempting to repudiate the contents of the stipulation. That is plain by Claimant's testimony and a comment made by Claimant's counsel during Dr. Trabulsi's deposition. Specifically, Claimant's counsel stated that "[q]uite frankly, the stipulation is incorrect.... It was garnered under duress and it was incorrect." R.R. 203a. However, he

never specified how it was incorrect and presented no evidence of duress. Claimant's counsel instead chose to litigate this reinstatement petition as if the earlier stipulation and May 2006 WCJ's decision did not exist.

12. In light of our disposition of the case, we do not address Employer's remaining arguments.