IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, : 
                 Petitioner : 
                  : 
             v. :   No. 2048 C.D. 2016
                  :   Submitted: April 28, 2017
Workers' Compensation Appeal : 
Board (Marinack), : 
              Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: August 21, 2017

      The City of Pittsburgh (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying Employer's petition to suspend the compensation benefits of Kenneth Marinack (Claimant). In so doing, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Employer did not prove Claimant had voluntarily removed himself from the workforce. Employer argues that the evidence proves otherwise and, thus, the Board erred in affirming the WCJ. Discerning no merit to this contention, we affirm the Board.

      This case has a protracted history. Claimant worked as a firefighter for Employer. On May 21, 2004, he was injured when he fell in a stairwell while pulling down a ceiling in a burning building.[1] Employer issued a Notice of Compensation Payable (NCP) describing the accepted injury as a left shoulder

_____

[1] Claimant was 42 years old at the time of the injury.

rotator cuff tear; aggravation of lumbar disc disease; and a psychological adjustment disorder with anxiety and depression. Pursuant to the NCP, Claimant collected compensation benefits in the amount of $690 per week.

On September 16, 2008, Dennis J. Phillips, II, M.D., one of Claimant's treating physicians, informed Employer that Claimant could return to full-time work in a light-duty position. On September 18, 2008, Employer sent Claimant a Notice of Ability to Return to Work pursuant to Section 306(b) of the Workers' Compensation Act (Act).[2] On September 24, 2008, Employer filed a petition to suspend Claimant's compensation benefits as of September 16, 2008, because Claimant had "retired and voluntarily removed himself from the entire labor market and/or work force." Reproduced Record at 2 (R.R. __). A hearing on the suspension petition was conducted before WCJ Nathan Cohen.[3]

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, 77 P.S. §512(3). Section 306(b)(3) of the Act states as follows:

> If the insurer receives medical evidence that the claimant is able to return to work in any capacity, then the insurer must provide prompt written notice, on a form prescribed by the department, to the claimant, which states all of the following:
>
> (i) The nature of the employe's physical condition or change of condition.
>
> (ii) That the employe has an obligation to look for available employment.
>
> (iii) That proof of available employment opportunities may jeopardize the employe's right to receipt of ongoing benefits.
>
> (iv) That the employe has the right to consult with an attorney in order to obtain evidence to challenge the insurer's contentions.

77 P.S. §512(3).

[3] Employer also filed a termination petition regarding Claimant's psychological injury, which was granted by the WCJ. Claimant filed a penalty petition, which was denied by the WCJ. The termination and penalty petitions were not appealed to this Court.

In 2010, Employer filed a second suspension petition, asserting that Claimant's failure to report earnings from self-employment warranted a suspension of benefits. This Court agreed, **(Footnote continued on the next page . . .)**

Employer submitted the deposition of Dr. Phillips, a board certified orthopedic surgeon who has treated Claimant for his left shoulder injury since October 2004. Dr. Phillips opined that Claimant's left shoulder injury rendered him incapable of doing the heavy work of a firefighter. However, in April 2005, Dr. Phillips sent Employer a report stating that Claimant could do sedentary work. On September 16, 2008, Dr. Phillips released Claimant to do light-duty work, with a lifting limit of no more than twenty pounds. When Claimant experienced increasing left shoulder pain, Dr. Phillips limited Claimant to sedentary work as of October 28, 2008. On March 25, 2009, Dr. Phillips did surgery on Claimant's left shoulder, which left him temporarily totally disabled. The postoperative diagnosis was mild arthritis in the shoulder joint. As of May 1, 2009, when he was deposed, Dr. Phillips had not yet released Claimant to do any type of work.

Employer also presented the deposition testimony of Barbara E. Swan, M.D., who is board certified in physical medicine and rehabilitation, and has treated Claimant's work-related back injury since July 28, 2005. In September 2005, Dr. Swan informed Claimant that he would not be able to return to work as a firefighter. On October 14, 2008, following a physical examination, Dr. Swan released Claimant to do medium-duty work, notwithstanding his back injury.[4] Dr. Swan testified that Claimant has never asked her to identify his job restrictions, but in 2006 they did have a conversation about the Office of Vocational Rehabilitation

---

(continued . . .)

and granted a suspension as of June 2009. *Marinack v. Workers' Compensation Appeal Board (City of Pittsburgh)*, (Pa. Cmwlth., No. 871 C.D. 2015, filed February 19, 2016). However, that decision did not affect the instant suspension petition.

[4] Employer sent Claimant a second Notice of Ability to Return to Work upon receipt of Dr. Swan's release.

(OVR). Claimant advised her that OVR was pessimistic about his job prospects given his physical limitations.

Employer submitted Claimant's employment record. It recounted that Claimant was discharged because he did not inform Employer that he was earning wages in construction while he was collecting disability compensation and benefits under what is commonly known as the Heart and Lung Act.[5] Claimant's discharge rendered him ineligible for a disability or retirement pension. However, Claimant has continued to receive workers' compensation disability and Heart and Lung Act benefits since his discharge.

Claimant testified in opposition to Employer's petition, both by deposition and by live testimony. Claimant recounted that he has experienced both back and shoulder pain since his 2004 work injury and has never returned to work.

Regarding Employer's April 2005 discharge, Claimant explained that an elderly couple for whom he was doing construction work complained to Employer about the quality of his work. Employer investigated and referred the matter to the "Fire Trial Board," which found that Claimant had acted unethically by failing to report his construction work income to Employer. R.R. 25. On that basis, Claimant was discharged.

Claimant stated that prior to being fired he had applied for a pension. He testified that he was required to submit documentation from three medical doctors in order to apply and he did submit this evidence. However, shortly

_____

[5] Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638. The Heart and Lung Act provides firemen injured on the job their full salary. They receive these benefits concurrent with their workers' compensation disability benefits. According to Claimant, Employer attempted to stop paying him Heart and Lung Act benefits after he was fired, but a city arbitrator did not allow it.

4

thereafter, Employer discharged him, which caused his pension application to be denied.

Claimant testified that he considers himself to be disabled, but he denied that he has withdrawn from the workforce. He testified that he began working with a vocational counselor from OVR sometime in 2006 and met with him three times, most recently in September 2007. Because of his significant physical limitations, Claimant is not sure what work, if any, he is able to do.

Claimant acknowledged receiving Employer's two Notices of Ability to Return to Work in September and October of 2008. After receiving the Notices, Claimant interviewed for two jobs. One position was at a financial planning company managed by his aunt and the other was at a commercial insulation company owned by a high school friend. Claimant also looked at the want ads for jobs. However, when Claimant was scheduled for surgery, he stopped looking for work.[6] Claimant stated that he planned to return to OVR to seek employment training after his March 25, 2009, shoulder surgery, at which point he would learn the full extent of his capabilities.

Crediting the testimony of Dr. Phillips and Dr. Swan, the WCJ found that Claimant was capable of modified-duty work "at all relevant times." WCJ Cohen Decision, 10/27/2009, at 12; Finding of Fact No. 40.[7] The WCJ also found that Claimant never asked his doctors about what, if any, work restrictions applied to him and did not seek their help with the OVR. The WCJ did not credit

---

[6] Claimant testified on March 16, 2009.

[7] The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

5

Claimant's testimony that he did not withdraw from the workforce. The WCJ found that contacting a family member and a childhood friend about a job did not constitute a good faith effort to find work. The WCJ also found that because Employer alleged Claimant had retired, Claimant had the burden to show that he had been forced out of the workforce by his injury or that he was searching for work in good faith. Claimant failed to meet his burden. Accordingly, the WCJ suspended Claimant's workers' compensation benefits as of September 16, 2008, the date of Dr. Phillips' initial work release.

Claimant appealed, and the Board reversed. First, the Board held that the WCJ erred in finding that Claimant had retired. To the contrary, the evidence showed that Employer fired Claimant, who was then rendered ineligible for any type of pension. Claimant's discharge did not show that Claimant had withdrawn from the workforce. In the absence of evidence that Claimant had withdrawn from the workforce, the Board held that it was Employer's burden to prove that Claimant had earning capacity, which it could do by introducing evidence of a job referral or a labor market survey. Because Employer did not do so, the Board denied the suspension petition.

Employer petitioned this Court for review, and we affirmed the Board in *City of Pittsburgh v. Workers' Compensation Appeal Board (Marinack)*, (Pa. Cmwlth., No. 100 C.D. 2011, filed February 7, 2012). Our decision was based on *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson)*, 4 A.3d 1130, 1134 (Pa. Cmwlth. 2010) (plurality op.) (*Robinson I*), *affirmed*, 67 A.3d 1194 (Pa. 2013) (*Robinson II*), which at that time was pending before the Pennsylvania Supreme Court.

6

Employer petitioned for allowance of appeal to the Supreme Court. By that time the Supreme Court had decided *Robinson II*, which affirmed *Robinson I*. In doing so, *Robinson II* established a new "analytical paradigm" for deciding whether an employee on compensation has withdrawn from the workforce. *Robinson II*, 67 A.3d at 1209. The Supreme Court vacated this Court's order of February 7, 2012, and remanded for reconsideration in light of *Robinson II*.

On remand, this Court explained that the WCJ had not made factual findings on Claimant's separation from the workforce and did not have the benefit of the Supreme Court's analysis in *Robinson II*. Accordingly, we ordered a remand so the WCJ could "reassess all relevant evidence presented in this case and determine whether Employer proved, through the totality of the circumstances, that Claimant voluntarily withdrew from the workforce." *City of Pittsburgh v. Workers' Compensation Appeal Board (Marinack)*, (Pa. Cmwlth., No. 100 C.D. 2011, filed January 8, 2015), slip op. at 11.

On remand, the case was reassigned to a new WCJ, Gerald Yanity.[8] WCJ Yanity adopted WCJ Cohen's prior findings of fact and then made additional findings to address the issue presented on remand. Specifically, the WCJ found as follows:

> 2. Claimant has made no affirmative statements, nor has he taken any affirmative actions, which indicate an intent to withdraw from the workforce voluntarily. Judge Cohen found that Claimant's efforts to locate work were "questionable at best" and I reaffirm that finding. Although Claimant's job search efforts were certainly questionable, the record of OVR and Claimant's applications for employment are not consistent with a purported voluntary withdrawal from the workforce.

---

[8] WCJ Cohen had retired.

7

3. Claimant's initial separation from his job with Employer was not voluntary. There is no genuine dispute regarding the fact that Claimant's termination from the Employer was the result of his violation of Fire Bureau Regulations.

4. Following his termination from employment, Claimant made various perfunctory and feeble attempts to find suitable work on his own. Claimant's lack of diligence in his job search does not, however, convert his removal from the workforce from involuntary to voluntary.

WCJ Yanity Decision, 11/06/2015, at 4-5; Findings of Fact Nos. 2-4 (internal citations to the record omitted). Based on these findings, the WCJ concluded that "Employer has failed to prove, by the totality of the circumstances, that Claimant ha[d] voluntarily removed himself from the workforce." WCJ Yanity Decision, 11/06/2015, at 5; Conclusion of Law No. 4.

Employer appealed to the Board, arguing that the WCJ's conclusion was not consistent with the factual findings of WCJ Cohen, which had been adopted by WCJ Yanity. The Board rejected this argument. The Board concluded that WCJ Yanity carried out the remand order and properly applied the legal analysis required by *Robinson II*. Board Adjudication, 11/30/2016, at 11. Claimant's lack of diligence in looking for work did not, under *Robinson II*, prove that he had voluntarily left the workforce. Accordingly, it was Employer's burden to prove the availability of work within Claimant's residual capacity, either by job referrals or by a labor market survey, in accordance with *Robinson II*.

Employer has petitioned for this Court's review.[9] Employer first contends that the Board misinterpreted and misapplied the holding in *Robinson II*,

---

[9] This Court's review of an order of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or **(Footnote continued on the next page . . .)**

8

thereby imposing an insurmountable burden of proof upon Employer. Second, Employer contends that because WCJ Cohen found, as fact, that Claimant had removed himself from the workforce, WCJ Yanity erred in finding otherwise.

We begin with a review of *Robinson II*. In that case, a police officer was placed on light-duty work in 1997 because of a work injury. In 2001, she sustained new injuries in an automobile accident, while traveling to a medical appointment to treat her 1997 work injury. The employer accepted liability for the new injuries. Thereafter, the claimant did not return to her light-duty position and the employer did not offer any other light-duty work. In 2004, the claimant applied for and received a disability pension from the employer on the basis that she was unable to perform her pre-injury job.

In 2007, the claimant underwent an independent medical examination (IME), which found her unable to return to work as a police officer but able to perform modified-duty work. The employer sent the claimant a Notice of Ability to Return to work on November 8, 2007, and three weeks later filed a petition to suspend compensation benefits, asserting that the claimant had voluntarily removed herself from the workforce.

The WCJ denied the suspension petition because the employer had eliminated the claimant's light-duty job. Further, the claimant had reported to the local unemployment center after receipt of the Notice of Ability to Return to Work and the suspension petition. At the center, she searched for available jobs she could perform, but did not find any. The Board affirmed the WCJ.

---

**(continued . . .)**
whether an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

9

Before this Court, the employer argued that the claimant had retired. With one exception, the claimant made no effort to find employment after 2001. In a plurality opinion, we held that the employer did not meet its burden for several reasons: the employer terminated the claimant's light-duty position; the claimant did not state in her disability pension application that she was incapable of any employment; the claimant did look for work at least once; and the employer did not submit any evidence of available positions within her restrictions. *Robinson II*, 67 A.3d at 1199-1200 (summarizing this Court's analysis in *Robinson I*).

The Supreme Court affirmed *Robinson I*. It used the appeal to clarify the standard to apply when considering whether a claimant has voluntarily withdrawn from the workforce. *Id*. at 1209. The Supreme Court explained that a claimant's application for a disability or retirement pension does not create a presumption that a claimant has removed herself from the workforce. At most, the acceptance of a retirement pension creates a

> permissive inference that the claimant has retired. Such an inference, if drawn, is not on its own sufficient evidence to establish that the worker has retired-the inference must be considered in the context of the totality of the circumstances. The factfinder must also evaluate all of the other relevant and credible evidence before concluding that the employer has carried its burden of proof.

*Id*. The Supreme Court further explained as follows:

> If the employer produces sufficient evidence to support a finding that the claimant has voluntarily left the workforce, then the burden shifts to the claimant to show that there in fact has been a compensable loss of earning power. Conversely, if the employer fails to present sufficient evidence to show that the claimant has retired, then the employer must proceed as in any other case involving a proposed modification or suspension of benefits.

*Id.* at 1209-10.

Applying this standard, the Supreme Court held that the claimant's disability pension showed only an intention to withdraw from her pre-injury job, not the entire workforce. Regarding the employer's claim that the claimant received a disability pension for many years without seeking new employment or evidence that she was incapable of work, the Supreme Court responded as follows:

> the fact that claimant did not submit evidence showing that she was unable to work does not prove voluntary retirement, especially in light of the [e]mployer's own medical testimony regarding [c]laimant's physical limitations, and the absence of evidence of available work within her restrictions or expert testimony regarding her earning power.

*Id*. at 1210 (internal footnote omitted).

With the principles of *Robinson II* in mind, we turn to Employer's first issue, *i.e.*, that the Board misapplied the principles of *Robinson II*, thereby placing an insurmountable burden of proof upon Employer. Employer argues that *Robinson II* directed a "totality of the circumstances" analysis; on remand, the WCJ did only "piecemeal analysis" of the record. Employer Brief at 23. Claimant responds that WCJ Yanity properly followed the standard set forth in *Robinson II*, as the Board held. Employer simply failed to meet its burden of proof that Claimant had removed himself from the workforce.

In its challenge to the WCJ's *Robinson II* analysis, Employer challenges Findings of Fact Nos. 2 through 4 in the WCJ 's decision. We consider those challenges *seriatim*.

In Finding of Fact No. 2, the WCJ recited that Claimant made no affirmative statement or actions indicating his intent to retire. Employer

11

characterizes this statement as self-serving. That characterization does not make the finding of fact erroneous.

In Finding of Fact No. 3, the WCJ recited that Claimant's separation was involuntary. Employer complains that Claimant's separation was due to misconduct and Claimant would have been receiving a pension had it not been for his misconduct. Finding of Fact No. 3 correctly characterizes Claimant's separation from work as involuntary, an apt description of a discharge. It does not mention Claimant's attempt to obtain a pension, but that does not constitute error. In any event, "seek[ing] or accept[ing] a pension" is not sufficient evidence of intent to retire. *Robinson II*, 67 A.3d at 1209.

In Finding of Fact No. 4, the WCJ found that Claimant's lack of diligence in seeking work did not constitute a voluntary removal from the workforce. Employer argues that Claimant's attempts to find work were discredited by WCJ Cohen and, thus, Finding of Fact No. 4 is in error. We disagree.

WCJ Yanity adopted WCJ Cohen's findings of fact, but these findings were silent on the issue of Claimant's retirement. Nevertheless, WCJ Yanity expressly accepted WCJ Cohen's determination that Claimant's efforts to locate work were "questionable at best." WCJ Yanity Decision, 11/6/2015, at 2; Finding of Fact No. 2. In fact, WCJ Yanity described Claimant's attempts as "perfunctory" and "feeble." WCJ Yanity Decision, 11/6/2015, at 3; Finding of Fact No. 4. However, WCJ Yanity concluded it could not be inferred from Claimant's feeble job search that he had removed himself from the workforce.

Claimant's "feeble" attempts to find employment were more substantial than those of the claimant in *Robinson II*, who had not sought

12

employment in the six years before receiving the Notice of Ability to Return to Work and then responded with a single job application. Nevertheless, this lack of effort to seek employment was held not to prove voluntary retirement, particularly in "the absence of evidence of available work within her restrictions or expert testimony regarding her earning power." *Robinson II*, 67 A.3d at 1210. Likewise, here, Employer did not present evidence on the availability of work within Claimant's restrictions or his earning power.

Claimant was fired for misconduct and, thus, rendered ineligible for a pension. Employer does not explain whether Claimant sought a disability pension or a retirement pension. The fact that Claimant was in his mid-40s when he applied for the pension, and presented medical documentation to qualify, suggests that he sought a disability pension. However, it does not matter. Under *Robinson II*, seeking or accepting any type of pension, "much less a disability pension," does not raise a presumption that one has left the workforce. *Id*. at 1209. The Supreme Court explained that a disability pension shows "at most" that a claimant cannot perform the "time-of-injury position." *Id*. at 1205. It does not show that a claimant "decided to forgo all employment. Any presumption of a total inability to work or intent not to work is conjectural." *Id*.

Simply, Employer did not present the evidence required, such as job availability to Claimant, to allow the inference that Claimant has withdrawn from the workforce. The WCJ and Board did not err in their understanding and application of *Robinson II*.

In its second issue, Employer argues that WCJ Yanity's decision cannot be reconciled with WCJ Cohen's decision that Claimant voluntarily

13

removed himself from the workforce. WCJ Yanity did not, according to Employer, follow the remand instructions.

The decision of WCJ Cohen placed the burden on Claimant to prove that he could not work at any job because of his work injury or that he was actively looking for work. WCJ Cohen so held because he reasoned that Employer should not be burdened with having to demonstrate Claimant's intentions, an evidentiary matter within the control of Claimant. However, the Board held that WCJ Cohen erred because it was Employer's burden to prove Claimant had retired. Thus, the Board reversed WCJ Cohen. This Court agreed with the Board, but in light of *Robinson II*, we remanded the case to the WCJ because of the lack of a factual finding that Claimant had voluntarily separated from the workforce.

On remand, a WCJ must "confine his decision to the instructions within the remand order." *Teter v. Workers' Compensation Appeal Board (Pinnacle Health System)*, 886 A.2d 721, 723 (Pa. Cmwlth. 2005). "[A] WCJ is not required to produce the same result as the initial decision…." *Id.*

WCJ Yanity complied with the remand instructions. His new findings related solely to the question of Claimant's separation from the workforce pursuant to *Robinson II*; the initial burden of proof was placed squarely on Employer. Further, under *Robinson II*, the fact that Claimant applied for a disability pension was not sufficient to meet Employer's burden. The only other evidence of record of retirement was Claimant's "perfunctory" and "feeble" attempts to find a job. WCJ Yanity Decision, 11/6/2015, at 3; Finding of Fact No. 4. Both WCJ Yanity and the Board agreed that Claimant's lack of diligence did not prove a voluntary separation from the workforce.

14

We find no error in the Board's affirmance of WCJ Yanity's decision. As noted above, Claimant's attempts to find employment were more substantial than that of the claimant in *Robinson II*. Further, Employer's evidence was that Claimant was released to light-duty work in September 2008, but again limited to sedentary work in October 2008, due to increased shoulder pain. From October 2008 to March 2009, Claimant was awaiting medical clearance for shoulder surgery. On March 25, 2009, he underwent surgery and was held temporarily totally disabled. Thus, Claimant spent the majority of the time following his receipt of the September 18, 2008, Notice of Ability to Return to Work awaiting surgery. Under these circumstances it would be difficult to conclude Claimant's minimal job efforts during that period were due to a decision to separate from the workforce, as opposed to the limits imposed on him by his work injury.

For these reasons, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,                   :
                    Petitioner        :
                                      :
         v.                           :    No. 2048 C.D. 2016
                                      :
Workers' Compensation Appeal          :
Board (Marinack),                     :
                    Respondent        :

# **O R D E R**

AND NOW, this 21st day of August, 2017, the order of the Workers' Compensation Appeal Board dated November 30, 2016, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge