IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susie Barr,                          :
                Petitioner           :
                                     :
        v.                           :    No. 741 C.D. 2020
                                     :    Submitted: November 20, 2020
Workers' Compensation Appeal Board    :
(GMRI Inc. and LM Insurance          :
Corporation),                        :
                Respondents          :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge[1]
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                       FILED: April 16, 2021

        Susie Barr (Claimant) petitions for review of an adjudication of the
Workers' Compensation Appeal Board (Board) granting a termination petition filed
by GMRI, Inc. and LM Insurance Corporation (collectively, Employer). In doing
so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that
Claimant had fully recovered from her adjudicated work injuries and was able to
return to unrestricted work. Claimant contends that the WCJ erred because he
considered her pre-injury condition, which was irrelevant. Upon review, we affirm.

## Background

        Claimant sustained work-related injuries on December 12, 2015, after
slipping on the freezer floor and injuring her head and neck. Employer issued a

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

notice of claim denial on or about January 12, 2016. Claimant then filed a claim petition, seeking payment of wage loss benefits and medical bills.

On December 28, 2016, the WCJ found that Claimant suffered a work injury in the nature of a head injury. More specifically, the injuries consisted of "poor ocular motility related to concussion, benign positional vertigo (which [could not] be treated until her neck was cleared), and post-concussive headache/syndrome, neck strain/whiplash together with brain concussion elements." WCJ Decision, 12/28/2016, at 12, Finding of Fact (F.F.) No. 26; Reproduced Record at 14a (R.R. __).

On January 25, 2019, Employer filed a termination petition. In support of its petition, Employer offered the deposition testimony of Richard H. Bennett, M.D., who is board certified in neurology. Dr. Bennett performed an independent medical evaluation (IME) of Claimant in which he obtained a medical history from Claimant; conducted a physical examination; and reviewed Claimant's medical records.

Regarding Claimant's work injury, Dr. Bennett testified that Claimant told him that on December 12, 2015, "while getting materials from the freezer, she tripped over boxes, fell on an icy floor, hitting her right knee and injuring her lower back and neck, and she also said she had struck her head." Notes of Testimony (N.T.), 5/21/2019, at 10-11; R.R. 78a-79a. At the examination, Claimant appeared "confused and disoriented" but "had her hair and makeup in place." *Id.* at 14-15; R.R. 82a-83a. Dr. Bennett found this behavior inconsistent, explaining that "being so confused, you would think she would be disabled or disheveled." *Id.* at 15; R.R. 83a.

2

Dr. Bennett testified that his physical examination of Claimant showed normal vision and eye movements, a symmetrical face, and no weakness or loss of sensation. Likewise, his motor and sensory examination showed that her strength, sensation, and reflexes were all intact; there was no evidence of weakness or atrophy. Claimant exhibited poor balance when walking but did not require any assistive devices, such as a cane or walker. Additionally, there was no obvious tremor.

Dr. Bennett's musculoskeletal examination revealed no significant complaints with respect to Claimant's neck, cervical spine, lumbar spine, or back. Claimant was able to sit throughout the examination without difficulty. She was able to perform the straight leg raising maneuver without any radicular findings. There was no muscle tenderness or spasm.

From his review of Claimant's medical records, Dr. Bennett noted that Claimant had issues with memory, anxiety, depression, headaches, peculiar behavior, frequent stress-related issues, crying spells, and panic attacks. These issues appeared in Claimant's medical records as early as 2004 and as recently as one month before the accident. Claimant's November 2015 medical record showed that Claimant was taking Carisoprodol, a muscle relaxant; Clonazepam, for anxiety; Diazepam or Valium, for anxiety; Ondansetron, for nausea, associated with migraine headaches; narcotic Oxycodone; Ibuprofen, an anti-inflammatory medication for pain; Rizatriptan, for migraine headaches; Topiramate, also for chronic migraine headaches; Zolpidem or Ambien for sleep; Tylenol and calcium. N.T., 5/21/2019, at 19-20; R.R. 87a-88a. The medical record included a recommendation for Claimant to continue taking these medications.

Dr. Bennett testified that Claimant's work-related injury consisted of "poor ocular motility related to concussion, benign positional vertigo, post-

concussion headache syndrome, neck strain with whiplash, together with brain concussion elements." *Id*. at 23; R.R. 91a. Dr. Bennett opined that Claimant was fully and completely recovered from these conditions. He testified that there was no objective evidence of these diagnoses as of January 8, 2019, the date of his IME. Claimant did not require any additional treatment and was able to do exactly what she had done before the accident.

On cross-examination, Dr. Bennett stated that during the IME, there were no ocular motility issues or signs of vertigo. Dr. Bennett affirmed that Claimant's examination was normal and she did not exhibit symptoms that could be related to the accident of December 12, 2015. Dr. Bennett testified that he had reviewed voluminous records of other doctors as well as the results of diagnostic studies. He concluded that there was nothing wrong with Claimant.

In opposition to the termination petition, Claimant testified. She stated that she continues to suffer from "bad headaches." N.T., 7/17/2019, at 10; R.R. 279a. She explained that the headaches occur daily, sometimes with severe pain. The headaches have interfered with her ability to focus and with her memory. Claimant testified that her vision is blurry and that she sees double.

On cross-examination, Claimant testified that she is "getting a little better" since her work injury occurred. *Id*. at 20; R.R. 289a. Claimant acknowledged that she had headaches before the work injury but stated that they were not as bad as those she was currently experiencing.

Claimant offered the deposition testimony of Jarod B. John, M.D., who is board certified in psychiatry and neurology. Dr. John testified that he has been treating Claimant for headaches since December 2018. Claimant told him that in 2015 she had fallen at work and struck the back of her head. Claimant reported that

4

she was experiencing headaches, including light sensitivity, nausea, and vomiting; difficulty with balance; confusion; neck pain; and posttraumatic stress and depression.

Dr. John testified that the initial physical examination of Claimant was "relatively unremarkable." N.T., 7/9/2019, at 12; R.R. 187a. In the neurological examination, he noted that Claimant had some difficulty with recall and some trouble finishing her thoughts when speaking. She was able to spell and do calculations. He attempted to test her vision but stopped because the test made her headache worse. He observed a small tremor in Claimant's hands, bilaterally, but her walking and balance appeared normal.

Dr. John testified that, after the initial examination, Claimant had two appointments, one on January 10, 2019, and one on April 4, 2019, where she was seen by Brendan Garret, his physician's assistant. Those physical and neurological exams were consistent with her initial examination. Claimant advised that her headaches were still an issue.

On May 22, 2019, and June 28, 2019, Dr. John examined Claimant. She reported an improvement in her headaches from the Botox injections she had been receiving. In the neurological examination, Dr. John observed that Claimant had some hypersensitivity in her eyes, but her optic disc looked normal. Additionally, Claimant's pupil response was normal. He noticed, however, that Claimant had some difficulty following a target, in that her eyes would overshoot or overcompensate.

Dr. John opined that Claimant continued to suffer from post-concussive syndrome. He based this diagnosis on her cognitive issues, such as her inability to focus and to remember things, and on her headache and vision issues. Dr. John

5

testified that he has noticed an improvement in Claimant's headaches. He acknowledged that he is not treating Claimant for her vision, neck strain/whiplash or psychiatric issues.

On cross-examination, Dr. John acknowledged that concussion symptoms generally last three to six months. Claimant is exceptional because her symptoms have persisted for three years. Dr. John acknowledged that knowing a patient's "pre[-]injury baseline" can help differentiate between "what's related to an injury and what is related to a preexisting condition[.]" *Id.* at 47; R.R. 222a. Dr. John also acknowledged that he has not seen any records from the office of Claimant's primary care physician; the report of Dr. Bennett; or the report of Ellen M. Diebert, M.D., Claimant's previous neurologist.

## WCJ Decision

On October 18, 2019, the WCJ granted Employer's termination petition. In doing so, the WCJ credited Dr. Bennett's testimony, finding that he "provided more detail concerning the physical examination[,]" and he was "straight forward and unshaken upon cross-examination." WCJ Decision, 10/18/2019, at 15, F.F. No. 8(a); R.R. 378a. Additionally, the WCJ stated that Dr. Bennett "appeared to have a more detailed knowledge of the entire medical picture in this dispute, having actually reviewed the medical records that predated the work injury." *Id.* Dr. Bennett accepted the work injury and rendered an opinion that Claimant had recovered from those injuries.

By contrast, the WCJ found Dr. John's testimony less credible. The WCJ explained that Dr. John's focus was on Claimant's headaches, and he was not treating Claimant's neck strain or whiplash. Dr. John lacked an understanding of Claimant's prior medical conditions, which the WCJ found relevant and necessary

6

in order to be able to differentiate between symptoms related to the injury and symptoms related to her preexisting condition.

Finally, the WCJ did not find Claimant's testimony credible with respect to her claim that she has ongoing disability related to the work injury. When Claimant was questioned about past medical treatments that predated her work injury, she stated that she did not remember the content of these reports. Claimant then went on to testify, "[a]ll's [sic] I know is this is worse than I ever had in any of my years." WCJ Decision, 10/18/2019, at 16, F.F. No. 8(b); R.R. 379a. The WCJ believed that these two statements were contradictory and questioned how Claimant could not remember her past problems or treatments, but then "firmly state that the current problem is worse." *Id.*

Claimant appealed to the Board, which affirmed the WCJ's decision. Claimant petitioned for this Court's review.

## Appeal

On appeal,[2] Claimant raises two issues for our consideration.[3] First, Claimant argues that the WCJ erred by evaluating the conflicting expert medical opinions on the basis of her medical conditions that predated the work injury. Claimant maintains that her past medical conditions are irrelevant to this case. Second, Claimant argues that the WCJ failed to make a finding of a change in her condition. Claimant contends that a simple finding of full recovery is not sufficient;

---

[2] This Court reviews the Board's decision to determine whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Medical Center)*, 721 A.2d 1167, 1169 n.1 (Pa. Cmwlth. 1998).

[3] In the "Questions Involved" portion of her brief, Claimant lists five issues on appeal. However, in the "Argument" portion of her brief, Claimant only addresses two issues.

rather, there must be a factual finding that her physical condition changed from the time of the last disability adjudication.

## Analysis

Under Section 413(a) of Workers' Compensation Act, a WCJ "may, at any time, … terminate a notice of compensation payable, … upon petition filed by either party with the [D]epartment [of Labor & Industry], upon proof that the disability of an injured employe has … finally ceased…." 77 P.S. §772.[4] To terminate a claimant's benefits, the employer bears the burden of proving that the work injury has ceased. The burden is considerable since "disability is presumed to continue until demonstrated otherwise." *Giant Eagle, Inc. v. Workmen's Compensation Appeal Board (Chambers)*, 635 A.2d 1123, 1127 (Pa. Cmwlth. 1993). An employer can satisfy its burden "by offering unequivocal medical evidence which establishes with a reasonable degree of medical certainty that the claimant has fully recovered, can return to work without restrictions, and there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury." *Elberson v. Workers' Compensation Appeal Board (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.3 (Pa. Cmwlth. 2007) (citation omitted).

> In a case where the claimant complains of continued pain, this burden is met when an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which either substantiate the claims of pain or connect them to the work injury. If the WCJ credits this testimony, the termination of benefits is proper.

---

[4] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772.

*Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997) (footnote omitted).

## I.

Claimant first argues that the WCJ erred in finding full recovery based on Dr. Bennett's opinion because he relied, in part, on her pre-injury medical records. Claimant contends this was error because the WCJ ruled that evidence of her pre-accident conditions was inadmissible. Claimant argues that she should not have been required to prove that her ongoing symptoms were not caused by her pre-accident conditions.

Employer responds that Claimant is essentially asking this Court to reweigh the evidence and "toss out" the WCJ's credibility determinations. Employer Brief at 24. The WCJ listed several reasons why he found Employer's medical expert to be more credible, and that credibility decision was not based solely on the fact that Claimant's medical expert did not review her pre-work injury medical records.

The WCJ, as fact finder, has "exclusive province over questions of credibility and evidentiary weight, and the [WCJ]'s findings will not be disturbed when they are supported by substantial, competent evidence." *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995) (citation omitted). It is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

In opining that Claimant was fully recovered from her work injury, Dr. Bennett accepted Claimant's adjudicated work injuries, *i.e.*, "poor ocular motility related to concussion, benign positional vertigo, post-concussion headache syndrome, neck strain with whiplash, together with brain concussion elements." N.T., 5/21/2019, at 23; R.R. 91a. Dr. Bennett opined that she recovered from those injuries. Three years after her work injury, Dr. Bennett found no objective evidence of post-concussion headache syndrome, which generally lasts three to six months. The WCJ credited Dr. Bennett's opinion.

Claimant argues that because the WCJ sustained her objection to a question about her pre-injury condition, the WCJ erred in crediting Dr. Bennett, whose opinion, in part, was based upon her pre-injury medical records.

The WCJ sustained Claimant's objection to a question put to her about her pre-injury condition. The WCJ did so for the stated reason that he gives more weight to expert medical testimony than to a claimant's testimony about medical issues. Contrary to Claimant's argument, the WCJ's decision to sustain her objection was not a ruling that evidence concerning her pre-injury condition was inadmissible. Rather, he limited Claimant's testimony because the matter was better addressed by the medical expert witnesses.

In finding Dr. Bennett's testimony more credible than that of Dr. John, the WCJ explained that Dr. Bennett "had provided more detail concerning the physical examination. He referenced checking sensation, a musculoskeletal exam, checking for weakness and reflexes, and conducting a motor exam." WCJ Decision, 10/18/2019, at 15, F.F. No. 8(a); R.R. 378a. In addition, Dr. Bennett "appeared to have a more detailed knowledge of the entire medical picture in this dispute, having actually reviewed the medical records that predated the work injury." *Id.* The WCJ

10

acted within his province to credit Dr. Bennett over Dr. John. Dr. Bennett offered an unequivocal opinion of full recovery from Claimant's adjudicated work injury.

We conclude that the WCJ did not err in crediting Dr. Bennett's testimony, which constituted substantial evidence that Claimant had recovered from her work injury.

## II.

Claimant next argues that in order to terminate her disability compensation, Employer had to prove a change occurred in her physical condition after the last adjudication of her disability. In *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 919 A.2d 922 (Pa. 2007), the employer had filed repeated termination petitions, each of which was denied, until the fourth termination petition was granted. The Pennsylvania Supreme Court vacated the termination, explaining as follows:

> In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. Only then can the [WCJ] determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. Further, by natural extension it is necessary that, where there have been prior petitions to modify or terminate benefits, the employer must demonstrate a change in physical condition since the last disability determination.

*Id.* at 926. A "change of condition" is defined as "any change in the claimant's physical well[-]being that affects his ability to work." *Id.* "It can be the total recovery from an illness or merely that the symptoms subside." *Id.*

11

Here, Employer, unlike the employer in *Lewis*, has not engaged in the serial prosecution of termination petitions. To the contrary, this was Employer's first termination petition, to which the change of circumstances requirement does not apply. Simply, this case does not involve the concern raised by the Supreme Court in *Lewis*, *i.e.*, a series of termination petitions based on the same evidence "in the hope that one [WCJ] would finally decide in [the employer's] favor." *Id.* at 926 (quoting *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 640 A.2d 386, 389 (Pa. 1994)). Because this was Employer's first termination petition, Employer could not have been seeking a different result from a new WCJ.

Employer was not required to demonstrate a change in Claimant's physical condition since the last disability adjudication in order to seek a termination. We reject this argument.

**Conclusion**

Based on the foregoing, we affirm the adjudication of the Board.

_____
MARY HANNAH LEAVITT, President Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susie Barr, : 
               Petitioner : 
  : 
          v. :   No. 741 C.D. 2020
  : 
Workers' Compensation Appeal Board : 
(GMRI Inc. and LM Insurance : 
Corporation), : 
               Respondents : 

## **O R D E R**

AND NOW, this 16th day of April, 2021, the adjudication of the Workers' Compensation Appeal Board, dated July 2, 2020, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge