635 A.2d 1123

**GIANT EAGLE, INC., Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (CHAMBERS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 1992.

Decided Dec. 28, 1993.

Sylvester A. Beozzo, for petitioner.

Eric P. Betzner, for respondent Eleanor Chambers.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

Giant Eagle, Inc. (Giant Eagle) petitions for review [1] of an order of the Workmen's Compensation Appeal Board (WCAB) affirming a referee's dismissal of Giant Eagle's petition to terminate the compensation benefits of Eleanor Chambers pursuant to section 413 of The Pennsylvania Workmen's Compensation Act (Act). [2] We affirm.

1. This case was reassigned to the opinion writer on May 28, 1993.
2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

Chambers had been employed by Giant Eagle as a part-time meat wrapper for approximately eight months when, on May 1, 1989, she was injured while changing a tape on an automatic meat wrapping machine. Chambers received an electric shock to her right hand which radiated throughout her body leaving her with pain and numbness, particularly on her right side. As a result of this injury, Chambers received compensation pursuant to a Notice of Compensation Payable at the rate of $133.00 per week.

On December 4, 1989, Giant Eagle filed a petition for termination of compensation alleging that, based upon a September 19, 1989 examination by Gurbachan S. Kathpal, M.D., Chamber's treating physician, Chambers had fully recovered from her May 1, 1989 injury. Chambers filed an answer denying all material allegations and maintaining that she remained temporarily, totally disabled as a result of that injury. Accordingly, hearings were held before a referee.

In support of its termination petition, Giant Eagle presented medical records and an affidavit of recovery, all prepared by Dr. Kathpal,[3] as well as the deposition testimony of Dr. Kathpal taken on March 28, 1990. In this testimony, Dr. Kathpal stated that he had treated Chambers for persistent pain in her right side and for tingling and numbness in her hands from the time of her injury until September of 1989. (R.R. at 56a–57a.) Dr. Kathpal testified that initially he diagnosed Chambers' complaints as secondary to her electric shock injury and felt that she would probably be disabled only for a few months. After reviewing the results of an electromyography (EMG) performed on Chambers, Dr. Kathpal also believed that Chambers had carpal tunnel syndrome in her right hand which was unrelated either to Chambers' work

3. Following his September 19, 1989 examination, Dr. Kathpal signed a physician's affidavit of recovery form indicating that Chambers had recovered from her work injury and could return to her duties at Giant Eagle, although limited because of non-work-related carpal tunnel syndrome. Again, in a report dated October 13, 1989, Dr. Kathpal stated that Chambers' symptoms from her electric shock had improved but that she continued to suffer from carpal tunnel syndrome which prevented her return to work.

duties or to her electric shock injury.[4]  (R.R. at 59a–65a, 68a.) Dr. Kathpal then testified that because Chambers still had significant pain when he last saw her in September of 1989, he recommended that Chambers undergo surgery for the carpal tunnel syndrome before returning to work.  (R.R. at 68a). However, Dr. Kathpal felt that Chambers could perform restricted part-time work even with her present symptoms. (R.R. at 70a–71a.)

On cross-examination, Dr. Kathpal discussed the results of a somatosensory evoked responses (SER) test which he had performed on Chambers.  Dr. Kathpal explained that while an EMG tested nerves outside the spinal cord, the SER test is concerned with the conduction of responses within the spinal cord and brain.  Dr. Kathpal reported that the SER test results from Chambers' right arm and leg were abnormal, suggesting that her problem was in the spinal cord rather than in the nerves.  (R.R. at 75a.)  Finally, Dr. Kathpal opined that as of September 19, 1989, Chamber's carpal tunnel syndrome prevented her from returning to her regular work but that all the symptoms of her electric shock had "pretty much" subsided.  (R.R. at 82a, 97a.)  He agreed that Chambers would still experience an occasional twinge of tingling or numbness but felt that these would not hamper her return to work.  (R.R. at 82a.)  Dr. Kathpal also stated that *whatever was causing* Chamber's problem in her right hand, that was the cause of her disability at this time.  (R.R. at 82a.)

A subsequent hearing was held on December 3, 1990, at which Chambers testified on her own behalf.[5]  She stated that during the summer of 1990, she began treatments for neck problems at the Bradley Physical Therapy Clinic under the

4.  This EMG test was performed by a Dr. Bender; however, another physician, Dr. Frost, also performed an EMG on Chambers and found no evidence of carpal tunnel syndrome.  (R.R. at 76a.)

5.  Chambers also testified briefly at a hearing on February 9, 1990.  At that time, Chambers had stopped treating with Dr. Kathpal but stated that she did not feel able to return to work because she still suffered from the effects of her work accident.  Chambers testified that she continued to have headaches, pain in her arm and neck and numbness in her fingers.

direction of Dr. Kathpal. (R.R. at 39a–40a.) She admitted that she had not received any medical treatment between her last visit to Dr. Kathpal in September of 1989 and the start of this physical therapy, but testified that she returned to Dr. Kathpal because she continued to suffer from the neck pain and headaches that she had experienced ever since the time of her accident.[6] (R.R. at 40a–41a.)

In addition to her own testimony, Chambers also offered two additional reports of Dr. Kathpal, dated September 24, 1990 and October 10, 1990 respectively. In the September 24 report, Dr. Kathpal related that he had seen Chambers again in June of 1990 because she had been having a lot of neck pain and restricted movement of her cervical spine. He then reported that a magnetic scan of the cervical spine had revealed a mild compression at the C–6/C–7 level due to bulging of the disc. (R.R. at 134a.) In the report dated October 10, Dr. Kathpal wrote, "I feel Mrs. Chambers did injure her neck at the same time she suffered the electrical shock injury on May 1, 1989. All these symptoms pretty much started during that time and a significant degree of pulling can result in various kinds of injuries." (R.R. at 135a.)

Along with these records, Chambers recalled Dr. Kathpal as a witness and offered his deposition testimony taken on March 12, 1991, this time on Chambers' behalf. During direct examination, Dr. Kathpal testified that Chambers returned to him in June of 1990 at the suggestion of her physical therapist because of persistent pain in her right arm and neck. Upon re-examination, Dr. Kathpal found that Chambers had a disc out of place between the 6th and 7th vertebrae which he stated may have contributed to the arm and hand problems that Chambers had complained of "all along." (R.R. at 110.)

6. Chambers also offered the deposition testimony of Joseph Bradley, a registered physical therapist, who was treating Chambers at the physical therapy clinic. Bradley stated that he first saw Chambers in May of 1990, at which time he performed a brief screening examination and recommended that Chambers return to Dr. Kathpal for further evaluation of a possible cervical spine injury. Chambers did so, and Dr. Kathpal subsequently referred Chambers to Bradley for treatment of her cervical problem. At the time of Bradley's deposition, Chambers was receiving therapy three times a week for neck pain.

When questioned concerning his conclusion that Chambers injured her neck at the same time she suffered her electric shock injury, Dr. Kathpal explained that while it was difficult to pinpoint the cause of Chambers' problem, he surmised that the two occurred simultaneously because there was no intervening incident which would explain the later neck pain. (R.R. at 111a.) Dr. Kathpal also stated that Chambers' symptoms could stem from electric shock, carpal tunnel syndrome or an injury to the C–6/C–7 level. (R.R. at 111a–112a, 115a–117a, 128a.) On cross-examination, Dr. Kathpal admitted that because Chambers had not indicated any neck problems when he treated her in 1989 but brought these complaints to his attention for the first time in June of 1990, it would be difficult to correlate Chambers' neck problem with her May 1, 1989 injury due to a lack of documentation.[7] (R.R. at 128a–129a.)

Based upon this evidence, the referee made the following pertinent findings:

5. Based upon the testimony of Dr. G.S. Kathpal, who testified in this matter for the defendant and subsequently testified on a second occasion for the claimant, your Referee finds as a fact that the claimant continues to remain totally incapable of performing her former job as a meat wrapper for the defendant. Further, your Referee finds as a fact, based upon Dr. Kathpal's testimony, that the claimant remains disabled as a result of residual pain and numbness in her right extremity. Your Referee does not find that Dr. Kathpal's testimony supports a finding or conclusion that the claimant has fully recovered from her work injury. To the contrary, your Referee finds from Dr. Kathpal's testimony and reports that the claimant has continuing effects of her electrical shock injury, and further has sustained a cervical injury causing pain and numbness in the neck and right extremity as a result of the work-related injury. In making this finding, your Referee has also considered the

7. Contrary to Dr. Kathpal's testimony, Chambers testified that she informed Dr. Kathpal that she was experiencing neck pain and headaches during the first examination she had with him after the accident. (R.R. at 41a.)

testimony of the claimant's therapist, Joseph Bradley, and accepts the same as credible.

. . . . .

7. Your Referee finds as a fact that the defendant has failed to prove by sufficient, competent and credible evidence that the claimant has recovered from her work-related injury or that her disability has changed in any way.

. . . . .

9. Your Referee finds as a fact that the claimant has incurred and continues to incur reasonable and necessary expenses for the treatment of her work-related injury pursuant to Section 306(f) of the Pennsylvania Workmen's Compensation Act, as amended. Your Referee finds as a fact all of the claimant's treatment with Dr. Kathpal and Joseph Bradley is causally related to claimant's work-related injury of May 1, 1989. The defendant remains responsible for the payment of all such medical expenses.

(Referee's Findings of Fact Nos. 5, 7, and 9; R.R. at 190a–191a.)

Having determined that Chambers' disability did not cease and terminate, the referee concluded, as a matter of law, that Giant Eagle failed to meet its burden of proof and dismissed Giant Eagle's termination petition.[8] The WCAB affirmed, concluding that taken as a whole, the record contained sufficient competent evidence to support the referee's findings.

On appeal,[9] Giant Eagle argues that the referee erred by finding that Chambers' disability had not ceased and by

8. The referee's order of June 1, 1991 also vacated and set aside a previous interlocutory order dated February 9, 1990 which had granted Giant Eagle's request for supersedeas during the pendency of the termination petition proceedings. The same order also directed the reinstatement of compensation benefits plus 10% per annum interest on all deferred payments, awarded costs of $1206.93, directed Giant Eagle to pay all reasonable medical bills, and approved the attorney fee agreement.

9. Our scope of review is limited to determining whether an error of law was committed, whether any necessary findings of fact are unsupported by substantial evidence or whether constitutional rights have been

concluding that Giant Eagle had failed to meet its burden of proof entitling it to terminate Chambers' benefits. Specifically, Giant Eagle asserts that referee findings 5, 7 and 9 were not supported by substantial evidence; rather, Giant Eagle contends that Dr. Kathpal's testimony established that Chambers had fully recovered from her electric shock injury as of September 1989. Further, Giant Eagle maintains that even if Chambers did not fully recover from the electric shock, Dr. Kathpal's testimony did not support the referee's determination that Chambers also sustained a cervical injury at the time of her May 1, 1989 work accident because the testimony clearly was equivocal in that regard. However, in making these arguments, Giant Eagle seems to misunderstand the burden borne by an employer in termination cases.

It has long been held that the burden of proof in a termination petition is on the employer to show that all disability related to the compensable injury has ceased and, if a claimant is currently disabled, the employer must show a lack of causal connection between that disability and the compensable injury. *McGee v. L.F. Grammes & Sons*, 477 Pa. 143, 383 A.2d 864 (1978); *Iacono v. Workmen's Compensation Appeal Board (Chester Housing Authority and PMA Group)*, 155 Pa.Commonwealth Ct. 234, 624 A.2d 814 (1993); *Central Pennsylvania Community Action, Inc. v. Workmen's Compensation Appeal Board (Probeck)*, 103 Pa.Commonwealth Ct. 278, 520 A.2d 112 (1987); *McGinley v. Workmen's Compensation Appeal Board (Acme Markets, Inc.)*, 77 Pa.Commonwealth Ct. 214, 465 A.2d 147 (1983). This burden is considerable because disability is presumed to continue until demonstrated otherwise. *Olivetti Corp. v. Workmen's Compensation Appeal Board (Robinson)*, 75 Pa.Commonwealth Ct. 584, 462 A.2d 934 (1983). Moreover, the burden never shifts to the claimant to prove the existence of a causal connection between his disability and his injury. *Probeck; McGinley.* In fact, there is no burden on the claimant to prove anything at all because having once established a right to benefits, those

violated. *Carrier Coal Enterprises v. Workmen's Compensation Appeal Board (Balla)*, 118 Pa.Commonwealth Ct. 201, 544 A.2d 1111 (1988).

benefits remain in effect unless and until the employer satisfies its burden of proving entitlement to termination. *Iacono.* Giant Eagle simply has not met that burden of proof in this case.

First, with regard to the question of Chambers' continued disability, we note that Chambers herself testified that she continues to experience pain and does not feel capable of returning to work. We have held that such pain, even without evidence of anatomical cause, is sufficient to support a finding of continued disability. *JAB Enterprises, Inc. v. Workmen's Compensation Appeal Board (Haehn)*, 79 Pa.Commonwealth Ct. 638, 470 A.2d 210 (1984); *Hygrade Food Products v. Workmen's Compensation Appeal Board*, 62 Pa.Commonwealth Ct. 448, 437 A.2d 89 (1981). Indeed, a referee can give more credence to a claimant's testimony regarding incapacitating pain than to a doctor's testimony. *Hygrade.*

As to the medical testimony offered, this case is unusual in that the referee, instead of hearing conflicting medical testimony expressed by different doctors, was presented with the testimony of only one doctor, taken on two different occasions. There is no question that in the March 1990 deposition taken by Giant Eagle, Dr. Kathpal indicated that Chambers had basically recovered from her work injury and that any disability was caused by non-work-related carpal tunnel syndrome.[10] However, in his March 1991 testimony on behalf of Chambers, made with the benefit of further studies, Dr. Kathpal acknowledged that Chambers still suffered considerable pain and had restricted neck movement, an evaluation shared by Chambers' physical therapist. The referee, in the proper exercise of his discretion, may accept or reject the testimony of any witness in whole or in part and if the evidence thus accepted is such as a reasonable mind might accept as adequate to support a conclusion, those findings cannot be disturbed on appeal.

10. We note that although in his earlier testimony, Dr. Kathpal stated that Chambers had "pretty much" recovered from her electric shock injury, he acknowledged that Chambers occasionally would still have tingling and numbness.

*Lehman v. Workmen's Compensation Appeal Board (Temple University Hospital),* 64 Pa.Commonwealth Ct. 381, 439 A.2d 1362 (1982). Here, we agree with the WCAB that the record as a whole contains substantial evidence to support the referee's conclusion that Chambers' disability has not ceased.

■ Giant Eagle also contends, however, that even if Chambers did not fully recover from her May 1, 1989 injury, we must, at the very least, reverse the WCAB insofar as it affirms Chambers' cervical injury as being work-related. We disagree.

Dr. Kathpal testified that Chambers' continuing pain and other symptoms had three possible causes: electric shock, carpal tunnel syndrome or cervical injury. Dr. Kathpal opined that Chambers sustained her cervical injury at the same time she received her electric shock; however, he admitted that this connection was surmise on his part and that while he believed it possible, he lacked the documentation to definitively support the relationship. Giant Eagle points to this testimony, maintaining that because it was equivocal, it could not support Chambers' position that she suffered a work-related cervical injury on May 1, 1989. However, the question of whether Dr. Kathpal's testimony was equivocal concerning the causal relationship between Chambers' cervical injury and her May 1, 1989 injury is purely academic. Indeed, by his very inability to state conclusively the cause of Chambers' ongoing symptoms, Dr. Kathpal negates Giant Eagle's burden and establishes Chambers' ongoing disability. As previously stated, in the context of a termination petition, Chambers has no burden to prove a causal connection between her compensable injury and her continuing disability. Rather, Giant Eagle had the burden of proving the lack of any causal connection. *Iacono; Unity Builders, Inc. v. Workmen's Compensation Appeal Board,* 50 Pa.Commonwealth Ct. 527, 413 A.2d 40 (1980). Because Giant Eagle was unable to present any competent evidence to dissociate Chambers' cervical injury from her work accident on May 1, 1989, Giant Eagle has failed to meet this burden. Accordingly, we affirm.

## ORDER

AND NOW, this 28th day of December, 1993, the order of the Workmen's Compensation Appeal Board, dated June 17, 1992, is affirmed.

SILVESTRI, Senior Judge, dissenting.

The majority concludes that Giant Eagle simply has not met its burden of proof in this case. In so concluding, the majority determined that the record as a whole contains substantial evidence [1] to support the referee's conclusion that Chambers' disability has not ceased. I disagree with the majority's conclusion and I respectfully dissent.

The majority correctly notes that, in a termination proceeding under Section 413 of the Act, 77 P.S. § 772, it is well established that the employer has the burden of demonstrating by substantial evidence that the claimant's work-related disability has ceased. *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 142 Pa.Commonwealth Ct. 176, 597 A.2d 182 (1991), *reversed on other grounds*, 534 Pa. 327, 632 A.2d 1302 (1993). However, if the disability has not ceased, the employer has the burden, in the alternative, to either demonstrate that the claimant is able to return to his regular job without any loss of earning power or to show a lack of a causal connection between the disability and the compensable, work-related injury. *Id.* It is important to remember that the methods of proving entitlement to a termination are in the alternative, and where, as here, there is substantial evidence that the work-related disability has ceased, the employer is not required to establish work availability or to prove the lack of any causal connection. *See Laird v. Workmen's Compensation Appeal Board (Michael Curran & Associates)*, 137 Pa.Commonwealth Ct. 206, 585 A.2d 602 (1991).

1. *Substantial evidence exists when there is relevant evidence in the record which a reasonable person might accept as supporting the conclusion. Gallo v. Workmen's Compensation Appeal Board (United Parcel Service)*, 95 Pa.Commonwealth Ct. 158, 504 A.2d 985 (1986).

The majority also correctly notes that our scope of review is limited to determining whether an error of law was committed, whether any necessary findings of fact are not supported by substantial evidence, or whether constitutional rights have been violated. *Murphy v. Workmen's Compensation Appeal Board (Ames Department Store)*, 146 Pa.Commonwealth Ct. 366, 605 A.2d 1297 (1992). While a referee is permitted to accept or reject any witnesses' testimony, in whole or part, including the testimony of medical witnesses, *Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School District)*, 82 Pa.Commonwealth Ct. 469, 474 A.2d 1236 (1984), a referee must examine the testimony as a whole and arrive at a decision based upon the entirety of the testimony. *Bailey v. Workmen's Compensation Appeal Board (Lawton Feed & Supply, Inc.)*, 105 Pa.Commonwealth Ct. 106, 523 A.2d 415 (1987). A reviewing court must simply determine whether, upon consideration of the evidence as a whole, the referee's findings have the requisite measure of support in the record. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992).

The referee found that Chambers continues to remain totally incapable of performing her former job as a meat wrapper for Giant Eagle and remains disabled as a result of residual pain and numbness in her right extremity. The referee further found that Chambers has continuing effects of her electric shock injury and has sustained a cervical injury causing pain and numbness in the neck and right extremity as a result of the work-related injury.

The majority notes that, with regard to the question of Chambers' continued disability, Chambers herself testified that she continues to experience pain and does not feel capable of returning to work. The majority, relying on this Court's opinions in *JAB Enterprises, Inc. v. Workmen's Compensation Appeal Board (Haehn)*, 79 Pa.Commonwealth Ct. 638, 470 A.2d 210 (1984) and *Hygrade Food Products v. Workmen's Compensation Appeal Board*, 62 Pa.Commonwealth Ct. 448, 437 A.2d 89 (1981), holds that such pain is sufficient to support a finding of continued disability. While the existence of pain,

even without evidence of an anatomical cause, can support a finding of continued disability, such evidence does not in and of itself require a finding that the claimant remain disabled.[2] *See Kerns v. Workmen's Compensation Appeal Board (Colt Resources, Inc.)*, 149 Pa.Commonwealth Ct. 268, 613 A.2d 85 (1992) (claimant's assertion of continuing pain does not require finding that claimant remains disabled; finding that claimant is no longer disabled may be made where physician has stated that claimant is fully recovered and able to return to work and that there is no objective abnormality to support claimant's subjective symptoms such as pain).

The record herein, when viewed as a whole, does not support a finding that Chambers' disability had not ceased. At his March 28, 1990 deposition, Dr. Kathpal testified that he first treated Chambers for her electrical shock injury on March 19, 1989 at which time she complained of tingling, numbness and pain in her hands, arms, and legs, with the sensations being more marked on the right side. Based upon his initial examination of Chambers, Dr. Kathpal opined that her symptoms were secondary to the electric shock and that she would probably be disabled for a couple of months. On July 25, 1989, Chambers experienced increased pain in her right arm while decorating a cake at home. An electromyography (EMG) test revealed that Chambers had carpal tunnel

2. In *JAB Enterprises,* the Court merely noted that the lack of an objective basis for pain does not establish that the disability has ended or been reduced. The Court based its determination to affirm the denial of the termination petition on the fact that the claimant's treating physician refused to offer an opinion as to whether the claimant was capable of returning to work and thus concluded that there was not sufficient evidence to support the referee's decision to suspend compensation. *See Shepherd v. Workmen's Compensation Appeal Board,* 66 Pa.Commonwealth Ct. 101, 443 A.2d 862 (1982) (termination decision was upheld despite the evidence of a continuation of subjective symptoms on the basis of medical testimony that the claimant had fully recovered sufficiently to return to work). In *Hygrade,* there was medical testimony that claimant had developed carpal tunnel syndrome as a result of the accident and that while she could physically perform her duties, she could suffer pain so severe as to interfere with her work. The Court in *Hygrade* concluded that such evidence was sufficient to support the referee's determination of total disability.

syndrome[3] in her right hand. Dr. Kathpal opined that the carpal tunnel syndrome was not related to the original electrical shock injury of May 1, 1989 nor was it brought about by Chambers' duties as a meat wrapper at Giant Eagle. Dr. Kathpal reviewed a copy of a job analysis of Chamber's duties as a meat wrapper; the analysis, which was dated July 30, 1989, was prepared by Interpose, a job and vocational analysis company. Dr. Kathpal recommended that based upon his examinations of Chambers and a review of the test results and job analysis, Chambers should have surgery done for the carpal tunnel syndrome before she could go back to work. Dr. Kathpal examined Chambers on September 19, 1989 and signed a physician's affidavit of recovery form therein stating that Chambers had fully recovered from her electrical shock injury and was able to resume, without limitation, her previous occupation of part-time meat wrapper. Dr. Kathpal further testified that while Chambers has continuing effects of her electric shock injury and may occasionally experience a twinge of tingling or numbness, he felt that these effects would not hamper her return to work.

Dr. Kathpal also testified that Chambers does have limitations as a result of the carpal tunnel syndrome but that this condition is not related to her May 1, 1989 injury. In a report dated October 13, 1989, Dr. Kathpal reiterated that Chambers had recovered from her electric shock injury but she continued to suffer from carpal tunnel syndrome which prevented her from returning to work. In a report to Interpose dated November 8, 1989, Dr. Kathpal opined that Chambers could perform medium duty work and was capable of resuming her job at Giant Eagle on a part-time basis.[4] Dr. Kathpal noted that such limitations were only temporary until Chambers recovered from the carpal tunnel syndrome.

**3.** Dr. Kathpal testified that carpal tunnel syndrome is a condition which results from pressure on the median nerve as it passed from the wrist to the hand. Possible symptoms of carpal tunnel syndrome are tingling, numbness and pain in the fingers; however, such symptoms could extend throughout the entire arm.

**4.** Dr. Kathpal opined that Chambers was capable of working thirty-six hours a week/six hours a day for six days.

At his March 12, 1991 deposition, which was subsequent to his signing of the physician's affidavit of recovery, Dr. Kathpal reiterated that when he examined Chambers in September of 1989, her symptoms related to the electric shock injury had improved and that was the reason why he released her to go back to work. (R.R. 116a–117a.) Dr. Kathpal also testified that he resumed treating Chambers on June 12, 1990, at which time she complained of persistent pain and numbness in her right arm and also of neck pain. Dr. Kathpal further testified that he noted that Chambers had limitation of movement of her neck at that time. A magnetic scan of Chambers' cervical spine revealed a mild compression at the sixth and seventh vertebra due to bulging of the disc. In a report dated October 10, 1990, Dr. Kathpal opined that Chambers injured her neck at the same time she suffered the electric shock injury of May 1, 1989. However, when asked on direct examination how he arrived at such a conclusion, Dr. Kathpal responded as follows:

It's really difficult to separate what was causing her numbness. The most immediate pain for which she came initially was the electric shock, but since she complained of neck pain at a later date and we did not have any other incident, *it was surmised that it may have occurred at the same time, but I do not have a very definite proof of that.* (Emphasis added.)

(R.R. 111a.)

Dr. Kathpal further stated on cross-examination that prior to June 12, 1990, he was unaware of any history of neck complaints by Chambers. Dr. Kathpal also conceded that there was not any documentation which would relate Chambers' neck problems back to her injury of May 1, 1989.

While Dr. Kathpal did testify that Chambers sustained a cervical injury causing pain and numbness in the neck and right extremity as a result of the work-related injury, at no time did he ever testify that Chambers was in any way disabled or incapable of performing her former job as a result of the cervical injury. Dr. Kathpal never testified as to the extent of Chambers' limitation of movement of her neck nor did he ever offer an opinion as to whether such a condition

would impose any restrictions on Chambers' ability to resume her job with Giant Eagle. Significantly, Dr. Kathpal was never asked nor did he ever testify as to his opinion whether Chambers was not able to return to work as a result of the cervical injury.

Dr. Kathpal merely acknowledged that some of the symptoms experienced by Chambers in September of 1989, which he originally attributed to carpal tunnel syndrome, could have possibly been caused, at least in part, by the bulging disc. Dr. Kathpal never testified that Chambers remained totally incapable of performing her former job or that she remained disabled as a result of residual pain and numbness in her right extremity. At best, the record as a whole supports a finding that Chambers remains temporarily, partially disabled as a result of the carpal tunnel syndrome. Be that as it may, if a disability is present but no longer caused by the compensable injury, there is no right to continued benefits and the employer is entitled to a termination. *McGinley v. Workmen's Compensation Appeal Board (Acme Markets, Inc.)*, 77 Pa.Commonwealth Ct. 214, 465 A.2d 147 (1983).

Accordingly, the findings of the referee that Chambers remains disabled and totally incapable of performing her former job are not supported by substantial evidence and the referee erred by concluding that Giant Eagle failed to establish that Chambers' disability had ceased. Therefore, I would vacate the order of the Board and remand with directions to reverse the order of the referee and to enter an order granting the termination petition.