IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard McElvarr, : 
                Petitioner : 
                 : 
          v. : No. 451 C.D. 2020
                 : SUBMITTED: February 26, 2021
Workers' Compensation Appeal : 
Board (Coca Cola), : 
                Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED: July 29, 2021

Richard McElvarr (Claimant) petitions for review of the April 28, 2020 Order of the Workers' Compensation Appeal Board (Board), which affirmed in part and reversed in part the January 23, 2019 decision of a workers' compensation judge (WCJ). The Board affirmed the WCJ's conclusions that Claimant's Petition for Penalties (Penalty Petition) was barred by the doctrine of laches and that Claimant's employer, Coca-Cola Company (Employer), had presented a reasonable contest as to all issues pursuant to Section 440(a) of the Workers' Compensation Act (Act).[1] The Board, however, reversed the WCJ's conclusion that Claimant had fully recovered from his work-related lower lumbar spine injury of a herniated disc at L5-S1 (L5-S1 injury). For the following reasons, we affirm the Board's Order with

---

[1] Section 440(a) of the Act provides "[t]hat cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer or the insurer." Act of June 2, 1915, P.L. 736, *as amended*, added by Act of Feb. 8, 1972, P.L. 25, 77 P.S. § 996(a).

respect to Claimant's Penalty Petition and Employer's reasonable contest, but we reverse the Board's Order with respect to Claimant's recovery from his L5-S1 injury.

## I.     Background

Claimant worked as a union teamster truck driver for Employer.  On August 2, 1988, Claimant suffered a back injury while pushing a cart of fountain syrup, which hit a soft spot in the ground, causing it to stop abruptly.  Reproduced Record (R.R.) at 11a.  Employer paid compensation benefits without incident for 30 years. *Id.*  On October 18, 2016, Claimant filed a Petition to Review Compensation Benefits (Review Petition), alleging that there was an incorrect description of his work injury.  *Id.*  Neither a Notice of Compensation Payable nor a Compensation Agreement was produced acknowledging the original injury.  *Id.*  In a post-hearing submission, Employer admitted that Claimant had been receiving compensation benefits related to this injury and asserted that "there was [Bureau of Workers' Compensation (Bureau)] documentation issued at some point in time after August 2, 1988, for which [] Employer was made responsible for Claimant's work injury." *Id.*

On November 8, 2017, while Claimant's Review Petition was pending, Employer filed a Petition to Terminate Compensation Benefits (Termination Petition), asserting that Claimant had fully recovered from the August 2, 1988 work injury as of September 28, 2017.  *Id.* at 250a.

In response to Employer's Termination Petition, Claimant filed a Penalty Petition on November 13, 2017, asserting that Employer never filed a Notice of Compensation Payable with the Bureau, and thus, Employer's nearly 30-year delay in seeking to terminate benefits was unreasonable as a matter of law.  *Id.*  Claimant's Penalty Petition also alleged that Employer's Termination Petition amounted to an unreasonable contest as a matter of law.  *Id.*

2

The WCJ issued two decisions in this case: one on the Review Petition and the other on the Termination and Penalty Petitions. In her first decision, dated May 24, 2018 (2018 Decision), the WCJ concluded that Claimant's August 2, 1988 work injury consisted of a "herniated dis[c] at L5-S1, loss [of] sensation in the right leg, chronic regional pain syndrome (CRPS),[2] avascular necrosis of the left shoulder and bilateral hips, and osteoporosis." *Id.* at 19a. Neither party challenged the 2018 Decision.

In her second decision, dated January 23, 2019 (2019 Decision), the WCJ concluded that Claimant had recovered from his work-related injury of CRPS as of March 17, 2017, but he had not fully recovered from his remaining work-related injuries, including the L5-S1 injury. *Id.* at 260a. The WCJ also concluded that Claimant's argument that Employer never filed the proper documentation with the Bureau was barred by the doctrine of laches[3] and that Employer presented a reasonable contest in its Termination Petition. *Id.*

## A. Review Petition

Claimant testified that he suffered a herniated disc in his back and has undergone numerous surgeries due to loss of sensation in his right leg. *Id.* at 11a, 2018 Decision, Finding of Fact (F.F.) ¶ 2. After the surgeries on his back, Claimant developed CRPS and was wheelchair-bound for about four years. *Id.* Claimant received high-dose corticosteroid injections, which caused avascular necrosis of his

---

[2] CRPS is also known as reflex sympathetic dystrophy. R.R. at 13a. Symptoms of CRPS include hypersensitivity, redness, and swelling. *Id.* at 45a. These symptoms are triggered by the autonomic nervous system. *Id.*

[3] The doctrine of laches is an equitable defense, which "is available in administrative proceedings where no time limitation is applicable, where the complaining party failed to exercise due diligence in instituting an action and where there is prejudice to the other party." *Kiser v. Workers' Comp. Appeal Bd. (Weleski Transfer, Inc.)*, 809 A.2d 1088, 1094 (Pa. Cmwlth. 2002).

hips and shoulders.[4] *Id.* Although Claimant has relearned to walk, he continues to have CRPS symptoms and pain in his right foot, lower back, and left shoulder, and his left hip "due to the defective prosthesis that causes him to walk with a limp." *Id.* at 12a. Claimant continues to walk with a cane and continues to suffer pain in his back, shoulder, hips, and right leg; however, he admitted that his CRPS symptoms are not as severe as they used to be, and his leg "only very occasionally" turns red. *Id.* at 13a.

Claimant submitted multiple medical reports detailing his treatment and surgeries. *Id.* at 13a-15a. Claimant also submitted the deposition testimony of Dr. Schweizer, his primary care physician, who opined that Claimant's CRPS was a direct result of the L5-S1 laminectomy necessitated by the work injury. *Id.* at 13a, F.F. ¶ 4. Dr. Schweizer further explained that the treatment of Claimant's CRPS, with high-dose corticosteroids, caused Claimant's avascular necrosis of his left shoulder and both hips. *Id.* at 14a.

Claimant also submitted reports authored by Dr. Brody, an independent medical examiner who specializes in orthopedics, which recounted the numerous surgeries Claimant had undergone related to the L5-S1 injury. *Id.*, F.F. ¶ 5. After examining Claimant, Dr. Brody opined that Claimant could not return to gainful employment and had "significant and obvious" limitations of his neck, lower back, left shoulder, and both hips. *Id.* at 15a.

Employer submitted the deposition testimony of Dr. DeSouza, who is board certified in neurology with an added qualification in clinical nerve physiology. *Id.*,

---

[4] As a result of the avascular necrosis, "Claimant underwent nine hip replacements or revisions, and three to four left shoulder surgeries." R.R. at 12a. Claimant filed a medical malpractice suit related to these surgeries and settled his claim in 1995. *Id.* at 12a, 18a. Employer's workers' compensation insurance carrier approved the settlement and took 50% of the settlement amount as a subrogation lien. *Id.* at 18a.

4

F.F. ¶ 6. Dr. DeSouza reviewed Claimant's medical history and examined Claimant on March 17, 2017. *Id.* At the examination, Dr. DeSouza attempted to reproduce Claimant's CRPS symptoms through various physical maneuvers, but noted that Claimant presented no CRPS symptoms. *Id.* at 16a. Dr. DeSouza further noted that Claimant was able to walk around the examination room without his cane and without limping. *Id.* Dr. DeSouza related Claimant's CRPS and avascular necrosis of his hips and left shoulder to his L5-S1 injury from the work incident on August 2, 1988. *Id.* at 17a. However, Dr. DeSouza opined that Claimant had recovered from all of these injuries as of his March 17, 2017 examination. *Id.* In Dr. DeSouza's opinion, any remaining pain would be resolved with the use of a shoe lift, and the loss of sensation was related to Claimant's diabetes. *Id.*

In her 2018 Decision, the WCJ concluded that Claimant's work injury consisted of a "herniated dis[c] at L5-S1, loss sensation in the right leg, CRPS, avascular necrosis of the left shoulder and bilateral hips, and osteoporosis." *Id.* at 19a, Conclusion of Law (C.L.) ¶ 1. The WCJ found Claimant's testimony and the medical reports of Claimant's doctors credible and persuasive. *Id.* at 18a, F.F. ¶¶ 11, 13. The WCJ noted that there was no factual dispute as to the occurrence of the injury and Claimant's medical history corroborated that the diagnoses related back to the work incident. *Id.* The WCJ made no findings relating to Claimant's recovery from these injuries, noting that there was a pending Termination Petition. *Id.*, F.F. ¶ 12.[5]

---

[5] Employer did not appeal from the WCJ's 2018 Decision on the Review Petition. The only decision at issue in this appeal is the WCJ's 2019 Decision on the Termination and Penalty Petitions.

## B. Termination and Penalty Petitions

In support of its Termination Petition, Employer supplemented the record with two addendum reports by Dr. DeSouza. *Id.* at 253a-54a, 2019 Decision, F.F. ¶¶ 4-5. Dr. DeSouza challenged Dr. Schweizer's opinion that Claimant's osteoporosis was related to the work injury.[6] *Id.* at 254a. Dr. DeSouza reiterated his opinion that Claimant had recovered from CRPS and pointed to research that showed false-positive findings of CRPS in patients with diabetes, such as Claimant. *Id.* Dr. DeSouza did not address Claimant's L5-S1 injury in the supplemental reports, and his affidavit regarding Claimant's recovery only referenced CRPS. *Id.* at 259a.

Claimant introduced a narrative report by Dr. Schweizer to supplement the record. *Id.* at 256a, F.F. ¶ 7. In that report, Dr. Schweizer rebutted the claims in Dr. DeSouza's supplemental reports. *Id.* However, Dr. Schweizer's supplemental report did not address Claimant's L5-S1 injury. *Id.* at 257a.

In her 2019 Decision, the WCJ found Claimant's testimony to be credible and persuasive as to "his continuing pain and disability related to his lumbar area, left shoulder and bilateral hips"; however, the WCJ found Claimant's testimony regarding constant right leg pain unpersuasive. *Id.* at 259a, F.F. ¶ 14(a). The WCJ found Dr. Schweizer's opinion that Claimant had not recovered from "his work-related [L5-S1 injury], avascular necrosis of the left shoulder and bilateral hips, and osteoporosis" more credible and persuasive than Dr. DeSouza's. *Id.*, F.F. ¶ 14(b). However, the WCJ credited Dr. DeSouza's opinion that Claimant had recovered from his work-related CRPS as of his March 17, 2017 examination. *Id.*, F.F. ¶ 14(c). The WCJ further found that Dr. DeSouza did not address the work-related diagnosis of loss of sensation of the right leg, and thus, Claimant had not recovered from that

---

[6] Dr. DeSouza did not address Claimant's osteoporosis in the first hearing. R.R. at 19a.

injury. *Id.* at 259a-60a, F.F. ¶ 14(d). Accordingly, the WCJ concluded that Employer had not met its burden of proof that Claimant had ~~not~~ fully recovered "from his work-related diagnoses of [L5-S1 injury], loss of sensation of right leg, avascular necrosis of the left shoulder and bilateral hips, and osteoporosis," but that Employer had met its burden of proof that Claimant had fully recovered from his work-related diagnosis of CRPS as of March 17, 2017. *Id.* at 260a, C.L. ¶¶ 2-3.

The WCJ also concluded that Claimant's Penalty Petition was barred by the doctrine of laches and that Employer presented a reasonable contest in its Termination Petition. *Id.*, C.L. ¶ 4. The WCJ noted that Claimant filed his Penalty Petition nearly 30 years after the date of his injury and provided no explanation for this significant delay. *Id.*, F.F. ¶ 14(g). Further, the WCJ found that the passage of time prejudiced Employer from presenting evidence in its defense and obtaining documents from the Bureau. *Id.* The WCJ also noted that the Bureau's electronic filing system, known as the Workers' Compensation Automation and Integration System (WCAIS), was not in existence when the original documents would have been filed. *Id.* Therefore, the doctrine of laches barred Claimant's request for penalties based on Employer's failure to produce documentation. *Id.* Lastly, the WCJ concluded that "Employer presented a reasonable basis for [its] contest of all the matters herein due to the conflicting medical evidence presented by the parties and the finding of [Claimant's] full recovery from the [CRPS] work injury." *Id.*, C.L. ¶ 7.

### C.   Appeal to the Board

Both parties appealed the WCJ's 2019 Decision to the Board, which affirmed in part and reversed in part. *Id.* at 271a-72a. The Board affirmed the WCJ's conclusions regarding Claimant's Penalty Petition, concluding that laches applied,

and that Employer presented a reasonable contest. *Id.* at 280a-82a. The Board noted that no Bureau documents were submitted into evidence and no documents exist in WCAIS. *Id.* at 281a. The Board found, however, that "[t]he fact that [Employer] paid disability and medical benefits for the 1988 work injury without incident until 2016, as well as Claimant's reimbursement of [Employer's] subrogation lien in the mid-1990s, supports [Employer's] contention that there likely was official acknowledgement of the work injury with the Bureau at some point." *Id.*

Further, the Board found that Claimant did not allege that Employer failed to pay disability benefits, only the "technical" violation of alleged failure to file the proper documents with the Bureau. *Id.* at 282a n.3. Accordingly, the Board determined that the Employer was prejudiced by the delay, because of its inability to obtain 30-year-old documents from the Bureau. *Id.* at 281a-82a. The Board also concluded that because the Employer was successful in proving Claimant's recovery from CRPS, its contest was reasonable. *Id.* at 282a.

The Board reversed the WCJ decision regarding recovery of the L5-S1 injury but affirmed the WCJ relating to nonrecovery of the loss of sensation in the right leg.[7] Important to the Board's decision was that "none of the evidence in this case relates Claimant's current lumbar pain to the 1988 work injury." *Id.* at 277a. The Board explained that Dr. Schweizer did not testify that the L5-S1 injury still exists; in fact, Dr. Schweizer testified that the various back surgeries "probably largely resolved the disc problem" and noted Claimant has regular arthritic back pain. *Id.*

---

[7] Neither party appealed the WCJ's decision regarding the other injuries, including the finding that Claimant had fully recovered from his CRPS, or that Claimant had not fully recovered from avascular necrosis of his left shoulder and both hips and osteoporosis. *Id.* at 273a n.2. Regarding the loss of sensation of the right leg, the Board noted that it was a separately recognized work injury from Claimant's CRPS. *Id.* at 277a. Dr. DeSouza did not specifically address the loss of sensation of the right leg, and, accordingly, the Board concluded that the WCJ properly denied termination of benefits from that injury. *Id.*

On the other hand, Dr. DeSouza testified that after his March 17, 2017 examination, Claimant's back was normal with no signs of nerve root problem. *Id.* While the Board noted that Dr. DeSouza's testimony regarding the L5-S1 injury was not credited by the WCJ, the Board nonetheless reasoned that "the credible testimony of Claimant and Dr. Schweizer compliments [sic] that of Dr. DeSouza and supports a finding that Claimant fully recovered from his work-related L5-S1 [injury] as of March 17, 2017." *Id.*

Three members of the Board dissented with respect to Claimant's recovery from the L5-S1 injury. *Id.* at 284a. The dissenting Board members (dissenters) explained that, as to the Termination Petition, the Board improperly shifted the burden of proof from Employer to Claimant. *Id.* Furthermore, the dissenters explained that the Board is not permitted to fashion a new finding of fact by stitching sections of testimony together the way the majority determined that Dr. Schweizer's testimony complemented Dr. DeSouza's testimony. *Id.* at 285a. Lastly, the dissenters discounted Dr. Schweizer's testimony that Claimant's back surgeries "probably largely resolved the disc problem" as equivocal and legally incompetent to support a finding of recovery. *Id.*

## II. Issues

On appeal,[8] Claimant asserts that the Board erred in reversing the WCJ's finding that he had not fully recovered from the L5-S1 injury because Employer failed to satisfy its burden of proving his full recovery from that injury. Claimant's Br. at 8-9. According to Claimant, the Board improperly substituted its own

_____

[8] "This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, [and] whether constitutional rights were violated or [whether] an error of law was committed." *City of Phila. v. Workers' Comp. Appeal Bd. (Brown)*, 830 A.2d 649, 653 n.2 (Pa. Cmwlth. 2003).

9

judgment as to the credibility and weight of the evidence for that of the WCJ. *Id.* at 10. Claimant also argues that the Board erred in denying his Penalty Petition because he filed the Penalty Petition as soon as he learned of the violation. *Id.* at 11-12. Finally, Claimant argues that Employer did not establish a reasonable contest. Claimant contends that he is entitled to attorneys' fees because Employer's evidence largely focused on the CRPS diagnosis, not Claimant's other work-related injuries. *Id.* at 14.

## III. Discussion

### A. Substantial Evidence

Claimant first argues that the Board improperly reweighed the evidence and substituted its own judgment with respect to his recovery from his L5-S1 injury because the WCJ's decision was based on substantial evidence. In response, Employer asserts that there was no evidence in the record as to the work-relatedness of Claimant's continued lower back injury, asserting that any pain is instead related to Claimant's age and arthritis. Employer's Br. at 22. "Substantial evidence is such relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact-finder, might accept as adequate to support the conclusion reached." *Bryn Mawr Hosp. v. Workers' Comp. Appeal Bd. (O'Connor & Self-Insured c/o Qualmed/Comptek)*, 701 A.2d 805, 807 n.3 (Pa. Cmwlth. 1997). "The relevant inquiry in a substantial evidence analysis is not whether 'there is evidence in the record which supports a factual finding contrary to that made by the WCJ' but, rather, 'whether there is any evidence which supports the WCJ's factual finding.'" *DTE Energy Co., Inc. v. Workers' Comp. Appeal Bd. (Weatherby)*, 245 A.3d 413, 421 (Pa. Cmwlth. 2021) (quoting *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth.

1998)). This Court must view the evidence in a light most favorable to the party that prevailed before the factfinder. *Id.*

Based on our review of the record, we agree with Claimant that the Board improperly substituted its judgment for the WCJ's factual findings and credibility determinations. The WCJ found Dr. Schweizer's testimony more credible and persuasive than Dr. DeSouza's testimony that "Claimant [has] not fully recovered from his work related [L5-S1 injury] . . . ." R.R. at 259a, F.F. ¶ 14(b). The WCJ explained that Dr. Schweizer has been Claimant's treating physician for numerous years, whereas Dr. DeSouza only conducted a one-time examination of Claimant. *Id.* Additionally, Dr. Schweizer's opinions were consistent with Claimant's credible testimony, while Dr. DeSouza discounted the significance of Claimant's credible complaints of pain and disability.[9] *Id.*, F.F. ¶ 14(b). Last, "Dr. DeSouza admitted that his one-time examination was focused on the [CRPS] diagnosis," and Dr. DeSouza admitted that his affidavit of recovery only referenced the CRPS diagnosis. *Id.* As such, the WCJ found that "Claimant [had] not fully recovered from his work-related diagnoses of L5-S1 herniation." *Id.* at 260a, F.F. ¶ 14(e). Accordingly, the WCJ concluded that Employer failed to carry "its burden of proof that Claimant was fully recovered from all of his work-related injuries." *Id.*, C.L. ¶ 2.

The Board relied on Claimant's testimony that some of his back pain resulted from gait and posture, and Dr. Schweizer's testimony that the back surgeries "probably largely resolved the disc problem." *Id.* at 277a. The Board concluded

---

[9] The WCJ credited Claimant's "testimony regarding his continued pain and disability related to his **lumbar area**, left shoulder and bilateral hips." R.R. at 259a, F.F. No 14(a) (emphasis added). The WCJ found that Claimant's testimony regarding these injuries was consistent at both hearings and corroborated by his medical records. *Id.* Indeed, Dr. DeSouza noted that Claimant reported pain "in his left hip, right foot, both knees, left shoulder, neck **and back**" in the range of 3-5 out of 10 on the pain scale. *Id.* at 251a, F.F. ¶ 3(d) (emphasis added).

"the credible testimony of Claimant and Dr. Schweizer complements that of Dr. DeSouza and supports a finding that Claimant fully recovered from his work-related L5-S1 injury as of March 17, 2017." *Id.* This reweighing of evidence was improper. *See DTE Energy*, 245 A.3d at 421.

Similarly, Dr. Schweizer's testimony that the back surgeries "probably largely resolved the disc problem," R.R. at 178, Schweizer Dep. at 45, is equivocal testimony of recovery, such that the Board could not rely on to overturn the WCJ's findings of fact. *Potere v. Workers' Comp. Appeal Bd. (Kemcorp)*, 21 A.3d 684, 690 (Pa. Cmwlth. 2011) ("Medical testimony is equivocal if it is less than positive or merely based upon possibilities."). When reviewing for substantial evidence, "the medical witness's entire testimony must be reviewed and taken as a whole, and a final decision should not rest upon a few words taken out of the context of the entire testimony." *Lewis v. Workmen's Comp. Appeal Bd.*, 498 A.2d 800, 803 (Pa. 1985). Again, the WCJ explained her credibility determinations in detail and based her decision on the evidence as a whole. The Board's reversal was based on isolated pieces of testimony stitched together with testimony that the WCJ expressly discredited.

Furthermore, the burden was on Employer to prove Claimant's full recovery from his work injury. *See Giant Eagle, Inc. v. Workmen's Comp. Appeal Bd. (Chambers)*, 635 A.2d 1123, 1127 (Pa. Cmwlth. 1993) ("This burden is considerable because disability is presumed to continue until demonstrated otherwise."). "[A] claimant has *no burden to prove anything* and, having already established the right to benefits, the benefits must remain in effect unless *the employer* proves that a termination of the claimant's benefits is warranted." *Cent. Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998) (emphasis in

12

original). Here, the only evidence Employer introduced relating to Claimant's L5-S1 injury was *specifically discredited* by the WCJ. The WCJ noted that Dr. DeSouza's testimony was focused on Claimant's CRPS symptoms, not his other injuries. To the extent that Dr. DeSouza addressed the spine injury, he simply stated that "percussion of the spine was normal" when he tried to provoke Claimant's CRPS symptoms. R.R. at 49a. Later, Dr. DeSouza concluded Claimant was fully recovered from his work-related L5-S1 injury. *Id.* at 71a-72a. The WCJ explained in detail why she was not persuaded by this scant evidence, and accordingly, Employer did not carry its burden to prove recovery.

The Board reweighed the evidence and reached its conclusion by substituting its judgment on the evidence before the WCJ. Furthermore, the Board improperly shifted the burden to Claimant to prove that he had not fully recovered at the termination hearing.

### B. Laches

Claimant argues that the Board erred in denying his Penalty Petition because he filed the Penalty Petition as soon as he learned of the violation. Claimant's Br. at 11-12. Employer counters that Claimant's 30-year delay in filing the Penalty Petition was prejudicial as a matter of law and that the WCJ has discretion to not impose a penalty. Employer's Br. at 25-26. The WCJ properly denied Claimant's Penalty Petition[10] claim that the Employer failed to issue any documentation

---

[10] The Act provides for penalties:

> Section 435 of the Act, 77 P.S. § 991 [added by Act of Feb. 8, 1972, P.L. 25,] confers power on a WCJ to award a penalty where there is a violation of the Act or the rules and regulations issued pursuant to the Act. However, the imposition of a penalty is at the discretion of the WCJ and is not required, even if a violation of the Act is apparent

**(Footnote continued on next page…)**

recognizing his work injury based on the doctrine of laches. "[T]he doctrine of laches is available in administrative proceedings where no time limitation is applicable, where the complaining party failed to exercise due diligence in instituting an action, and where there is prejudice to the other party." *Mitchell v. Workers' Comp. Appeal Bd. (Devereux Found.)*, 796 A.2d 1015, 1017-18 (Pa. Cmwlth. 2002).

We conclude that Claimant failed to act with due diligence in pursuing his claim for penalties against Employer for its alleged failure to file the proper documents with the Bureau. Claimant's argument that he had no reason to know the documents had not been filed until 2016 is belied by the fact that Claimant entered into the settlement agreement in 1995, which gave half of his third-party settlement to Employer's insurer. It is beyond reason that Claimant would voluntarily give away $375,000 without first checking with the Bureau that Employer had accepted his claim and was entitled to this portion of the settlement. A simple request to either Employer, the Bureau, or Employer's insurer would have revealed whether Employer had filed the documents accepting Claimant's injury. *See Pfeifer v. Westmoreland Cnty. Tax Claim Bureau*, 127 A.3d 848, 855 (Pa. Cmwlth. 2015) ("The question of whether a party exercised 'due diligence' in pursuit of a claim is not what a party knows, but *what the party may have known by the use of information within [his or her] reach*." (emphasis added)).

---

on the record. Because the assessment of penalties, as well as the amount of penalties imposed[,] is discretionary, we will not overturn a penalty on appeal absent an abuse of discretion by the WCJ. An abuse of discretion is not merely an error of judgment, but among other reasons, occurs when the law is misapplied in reaching a conclusion.

*Candito v. Workers' Comp. Appeal Bd. (City of Phila.)*, 785 A.2d 1106, 1108 (Pa. Cmwlth. 2001) (citations omitted).

14

Additionally, we conclude that Claimant's 30-year delay in filing his Penalty Petition unduly prejudiced Employer's ability to produce evidence and defend itself. *Id.* (noting that prejudice arises where due to the passage of time witnesses and documents are unavailable). It is undisputed that Employer accepted Claimant's claim and paid benefits without contest for nearly 30 years. Employer simply could not produce the necessary documentation. Importantly, the WCJ personally searched WCAIS and could not find the documents; however, she did find electronic data interchange transactions, which evidenced Employer's liability for the claim. R.R. at 250a. Moreover, the Board noted that WCAIS did not exist at the time of the injury, which reinforced the prejudice to Employer in producing 30-year-old documents. *Id.* at 281a. Last, Employer paid benefits without contest for 30 years, and Claimant did not allege that he was harmed in any way by Employer's alleged failure to file the proper documents. Accordingly, we conclude that Claimant's Penalty Petition was barred by the doctrine of laches.

## C. Reasonable Contest

Finally, Claimant argues that he is entitled to attorneys' fees pursuant to Section 440(a) of the Act, 77 P.S. § 996(a) (entitling successful claimants to attorneys' fees "[p]rovided, [t]hat cost for attorney fees may be excluded when a reasonable basis for the contest has been established by the employer"). We conclude that this claim lacks merit because Employer established a reasonable contest to all claims.

"The reasonableness of an employer's contest depends on whether the contest was prompted to resolve a genuinely disputed issue or merely to harass the claimant." *Yespelkis v. Worker's [sic] Comp. Appeal Bd. (Pulmonology Assocs. Inc.)*, 986 A.2d 194, 196 (Pa. Cmwlth. 2009). Before the WCJ, Employer prevailed

15

with respect to Claimant's recovery from CRPS and its defense of Claimant's Penalty Petition; therefore, Employer's contest of these issues was "necessarily reasonable." *Com. v. Workers' Comp. Appeal Bd. (Noll)*, 80 A.3d 525, 532 (Pa. Cmwlth. 2013).

Notably, Claimant does not argue that Employer's contest resulted in harassment. Instead, he asserts that because Dr. DeSouza's testimony focused primarily on the issue of CRPS, Employer did not reasonably contest all of Claimant's accepted work-related diagnoses. Claimant's Br. at 14-15. Claimant merely cites an unpublished opinion[11] in which this Court cautioned that employers which, "despite filing a termination petition[,] present[] no evidence whatsoever related to [the c]laimant's physical injuries . . . may subject [themselves] to unreasonable contest attorney fees." *Mitoulis v. Workers' Comp. Appeal Bd. (Sunrise Senior Living Mgmt., Inc.)* (Pa. Cmwlth., No. 991 C.D. 2018, filed Apr. 27, 2020), slip op. at 4 n.5. That did not occur here. Although Dr. DeSouza focused on Claimant's CRPS, he testified that Claimant had fully recovered from all his work-related injuries and explained how he came to those opinions. The WCJ did not credit these opinions and did not find full recovery of all injuries; however, the WCJ concluded that Employer had presented a reasonable contest. We find no error in this conclusion.

### IV. Conclusion

We conclude that the Board improperly reweighed the evidence and the WCJ's credibility determinations relating to Claimant's recovery from his L5-S1 injury and, therefore, the Board erred in reversing the WCJ on this issue. We further

---

[11] Unreported Commonwealth Court opinions may be cited for their persuasive value but are not binding precedent. Commonwealth Court Internal Operating Procedures, 210 Pa. Code §69.414(a).

conclude that the doctrine of laches barred Claimant's Penalty Petition and that Employer presented a reasonable contest in its Termination Petition.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard McElvarr,     :
     Petitioner  :
           :
   v.      : No. 451 C.D. 2020
           :
Workers' Compensation Appeal :
Board (Coca Cola),    :
     Respondent :

# **O R D E R**

AND NOW, this 29th day of July, 2021, the April 28, 2020 Order of the Workers' Compensation Appeal Board (Board) is hereby AFFIRMED IN PART and REVERSED IN PART. The Board's Order is reversed with regard to the termination of benefits regarding Richard McElvarr's L5-S1 injury and affirmed in all other respects.

         _____
         ELLEN CEISLER, Judge